# Wytheville.

RAILWAY EXPRESS AGENCY, INC. v. MYRTLE HALL LEWIS, ET ALS.

June 18, 1931.

Present, Prentis, C. J., and Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Hunton, Williams, Anderson & Gay,* for the appellant.

*Aubrey R. Bowles, Jr.,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

The Railway Express Agency, Inc., complains of an award made against it by the Industrial Commission. The Commission found the following facts:

M. C. Lewis was employed as a truck driver in the city of Richmond to receive and deliver packages sent and to be sent by the railway express company. In the morning hours his duties required him to be on the streets in the area between east Foushee and Eleventh streets, but in the afternoon he was subject to call to other parts of the city, depending upon the exigencies of the day. While at Main street station on the afternoon of May 17, 1930, Lewis informed his immediate superior that his wife was sick and asked permission to take her some chickens. To this request no objection was made. Before leaving Main street station he was instructed to call for a package at Third and DuVal streets, which is several blocks north of Broad street.

At the termination of his day's work Lewis was required to

deliver packages to his employer's office in Broad street station, check out for the day, and store the truck for the night in the garage located at Sheppard and Clay streets. He purchased the chickens near Second and Main streets, carried them to 805 west Main street to be dressed, made his call for the package on DuVal street, called back at west Main street for the dressed chickens, delivered them at his home at 2317 Stuart avenue, left his home for Broad street station, and was killed in a collision with an automobile on Park avenue, several blocks south of a direct route from Third and DuVal streets to Broad street station. At the time of the accident a number of packages destined for delivery were found in the truck.

The plaintiff in error states the issue in the following language: "The sole question at issue is whether an accident occurring when an employee is returning to his work after having deviated therefrom to engage in a personal errand is entitled to compensation."

One of the authorities cited to support the contention that the dependents of the deceased are not entitled to recover is *Kent* v. *Virginia-Carolina Chemical Co.*, 143 Va. 62, 129 S. E. 330. In that case the court said that to the general rule—that an injury occurring to an employee going to and from the place where his work is to be performed, is not compensable—there is an exception, namely, when the means of transportation is furnished by the employer, or the time consumed is included in the wages. Here the truck driven by the employee was owned by the employer and the time consumed in the deviation was paid for by it.

A more accurate statement of the question presented by the record is: Is an injury compensable where an employee, whose duties require him to operate a truck upon the streets of a city and is permitted to select what streets he will use, with the consent of his employer deviates from a direct route to perform a personal mission, completes the mission, starts to the point of delivery designated by his employer, and is injured

before reaching his destination, on a street in the direct course thereto?

The plaintiff in error contends that the award of the Industrial Commission is wrong because the accident did not arise out of and in the course of the employment within the meaning of the workmen's compensation act (Acts 1918, c. 400, as amended), and in support of his contention cites the following authorities: *Industrial Commission of Ohio* v. *Ahern,* 119 Ohio St. 41, 162 N. E. 272, 59 A. L. R. 367; *Zenker* v. *Zenker & Fidelity & Casualty Company of N. Y.,* 93 Pa. Super. Ct. 255; *Mary M. Taylor's Case,* 126 Me. 450, 139 Atl. 478; *Vitas* v. *Grace Hospital Society,* 107 Conn. 512, 141 Atl. 649; *Mueler Construction Co.* v. *Industrial Board,* 283 Ill. 148, 118 N. E. 1028, L. R. A. 1918-F, 891, Ann. Cas. 1918-E, 808; *Vickers* v. *Alabama Power Co.,* 218 Ala. 107, 117 So. 650.

A study of the above cases shows that the principles announced therein are not applicable to the facts in the case at bar.

In *Mountain* v. *Industrial Accident Commission of California,* 92 Cal. App. 176, 267 Pac. 913, the employee was sent in an automobile to get a suitcase for his employer. After procuring the suitcase, instead of returning in a direct course to the place designated by the employer, he deviated from such course by going seven blocks in an opposite direction for the purpose of getting a package of cigarettes for himself. While returning from the place he bought the cigarettes, and four blocks before reaching a direct course back to his point of destination, he was injured. Compensation was denied. The court stated that the authorities from other jurisdictions were not harmonious, but previous decisions of the California court sustained the ruling. In that case the deviation from the direct route was made without the consent of the employer, while in the present case the Commission found as a fact that the consent of the employer had been obtained.

*Marks' Dependents* v. *Gray,* 251 N. Y. 90, 167 N. E. 181,

183. The injured employee was helper to a plumber. His home and place of business were Clifton Springs. His wife went to visit relatives in a nearby town and he had promised, at the close of the day's work, to go for her in the family car. His employer, on learning this fact, requested him to take his tools and fix a faucet in the town where his wife was visiting. This was a trifling job, calling for fifteen or twenty minutes' work. On the way to get his wife, and when only about a mile from his home, he was injured on the highway in an automobile wreck and died. The court held that the hazards of the highway were unrelated to the service.

"In such circumstances we think the perils of the highway were unrelated to the service. We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been cancelled. We cannot draw that inference from the record now before us. On the contrary, the evidence is that a special trip would have been refused since the pay would be inadequate. The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own (*Clawson* v. *Pierce-Arrow Motor Car Co.*, 231 N. Y. 273, 131 N. E. 914). If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

The service to the master in the case under consideration was the sole reason for the journey from the employee's home to the Broad street terminal.

The facts in the case of *Dreyfus & Co.* v. *Meade*, 142 Va. 567, 129 S. E. 336, 338, reveal that the duties of Meade, a

night watchman, required him to be on the premises or immediately adjacent thereto. He was injured some two blocks from the premises while crossing the street on a personal mission. Meade, in the performance of his duties, was not required to expose himself to the risks or hazards of street travel, and when he left the premises and attempted to cross the street on a purely personal mission and was injured, the injury was the result of a risk not incident to, growing out of. or in the course of his employment. Chief Justice Prentis, who delivered the opinion in that case, said:

"There are cases in which awards have been sustained, although the employee was at the time doing something purely personal to himself, and holding that one may be thus occupied during the time in which he is also on duty and in the service of his master; but this principle cannot be extended to cover this injury, because it cannot be fairly said that a night watchman, whose place of duty is on the premises to be watched, or immediately adjacent thereto, is still on duty and serving his master when he has left the premises to cross the street and go two blocks away to enter another building on a purely personal errand. This errand was neither connected with the employment nor incident thereto."

The conclusion of the Commission is well supported by reason and numerous authorities. We cite the following:

In the case of *Fleischman* v. *Marshall,* 149 Va. 254, 141 S. E. 139, the deceased employee was a salesman required to use his employer's automobile and under the terms of his employment kept it in a garage at his home. He was subject to the call of his employer's customers at all hours of the day and night. He left his office and proceeded to his home in his employer's car; on his way he deviated from the most direct route to his home for the purpose of purchasing theater tickets in order to take his wife to the theater after dinner, presumably in his employer's car. He made other stops on the business of his employer, but before reaching home was killed in a collision

with another automobile. The employer contended that the accident did not arise out of or in the course of the employment because the employee had stopped to purchase theater tickets, which broke the course of the employment, because the trip home was for the sole purpose of taking his wife to the theater. The court confirmed the award of the compensation by the commissioner, saying that the "employee was on his way home in a conveyance provided by the employer and he was still charged with the performance of his duties as such employee. He had not at the time of the accident, which resulted in his death, embarked upon any enterprise of his own."

In the instant case the employee had accomplished the personal enterprise and was on the street for the sole benefit of his employer.

*Royal Indemnity Co.* v. *Hogan* (Tex. Civ. App.), 4 S. W. (2d) 93, is a case in which the injured employee was a mechanic employed by a company, a part of whose business was to recondition and sell second-hand cars. Frequently the mechanic, after the cars had been repaired in the shops, drove them for the purpose of locating any defects in their construction or condition. On this particular occasion there was no direct order given him to test this particular car. It had been reconditioned and was standing on the street in front of the shop. The mechanic took the car and, after driving it a short distance, overtook two young ladies walking and invited them to drive with him to their homes, which invitation was accepted. He stated to the young ladies at the time that he was testing the brakes of the car. One of the rules of the company forbade the employees to take passengers for rides while making tests of cars to locate defects therein.

By another rule the employees were forbidden to drive the cars solely for their own personal use without the consent of the employer. The court held that in taking the young ladies with him on the test drive, although in violation of one of the rules of the employment, the violation of this rule was neither

the sole nor the contributing cause of the accident, and that the injuries sustained originated in the business of the employment and were received while the employee was engaged in or about the furtherance of that business.

*Southern Casualty Company* v. *Ehlers* (Tex. Civ. App.), 14 S. W. (2d) 111, 113, shows that the injured employee was an automobile salesman. His particular business upon the occasion in question was the delivery of two trucks in his home town. He arrived in the town with the trucks too late to make the deliveries that night. There was another town some twenty-two miles away to which he went to interview "two prospects." By 11 o'clock that night he had seen both prospects, the last one at a place where a dance was in progress. After the interview closed the injured employee participated in the dance for an hour or more. When the dancing stopped he started back to his home for the purpose of retiring, and while on the way was injured.

The court held that the injured employee in stepping aside from the course of his employment to engage for an hour in the purely personal pastime of dancing and the immediate purpose of going directly from the dance to his home for a night's rest and the happening of the accident while putting that immediate purpose into effect, so interrupted the course and broke the continuity of his employment as to change his status and took him out of the protection of the compensation act; that his immediate duty, after closing the interview with the prospects, was the unfinished task of delivering the trucks to the purchasers, and he could not have been held to have resumed that employment until he regained possession of the trucks. The court by way of *dicta* said:

"Had the appellee resumed the actual course of his employment, after indulging in an hour's personal enjoyment of the dance, and had been thereafter injured while still in the course of that employment, his injury would have been compensable, and the hour's personal indulgence would have been but an

immaterial incident of his errand of duty, since the accident did not occur during that hour."

In *Rachels* v. *Pepoon*, 5 N. J. Misc. R. 122, 135 Atl. 684, the employee was hired to assist in the distribution of newspapers. His duties required him to ride the trucks of his employer from point to point where the papers were distributed. With the permission of his employer, after the work of distribution was over on the day of the accident, he remained at the last point of distribution for a matter of personal business and was too late to catch his employer's truck returning to the starting point. In order to return to the employer's place of business to resume his work, he personally hired an automobile, which he drove, and was killed in a collision on the way. The court said:

"We think the accident, causing the injuries resulting in death, arose out of and in the course of the employment of Robert Louis Pepoon. It did not happen while he was about his own business and personal affairs, but after the conclusion thereof."

A case directly in point is that of *Beaudry* v. *Watkins*, 191 Mich. 445, 158 N. W. 16, L. R. A. 1916-F, 576. The facts were that a delivery boy was sent on an errand to deliver a package at one address and to pick up a package at another and return with the latter to his employer's store. He was, at his request, given permission to deviate from the route in order to ride by his home to eat lunch during the performance of the errand. The boy delivered the first package, went to his home for lunch, where he remained ten minutes, and then proceeded to the address where he was to collect the package. On his way to the second address and off of the most direct route by reason of the deviation for lunch, he swung on to a moving truck which suddenly swerved and he was run over and killed. The court held that the death arose out of and in the course of the employment.

Though three judges dissented, their dissent was on the

ground of the wilful misconduct of the deceased in hanging on to the truck and thereby assuming a risk not incident to the employment.

Whether an injury is incident to or connected with a particular business, that is, whether it arises out of and in the course of the employment, depends upon the peculiar circumstances of each case. No exact rule can be formulated by which every case can be decided. The employment under consideration contemplated that the employee should drive his employer's truck on the various streets in the city of Richmond. No instructions were given him to use any particular street; it was contemplated that he should make his own selection of the course to follow in going from one point to another in behalf of his employer. The accident occurred during working hours and while the employee had charge of his master's truck and with packages therein destined for delivery at his master's office, and while he was en route thereto. The particular street, and, therefore, the place where the accident occurred, is not on the shortest or most convenient route between the last call for a package and the final destination of the packages. In traveling from Third and DuVal streets to the western part of the city, the employee, with the permission of the employer, deviated from a direct course for the purpose of performing a personal mission. After the complete performance of this personal mission he was much nearer Broad street station than he was when he called for the package at Third and DuVal streets. With the personal mission accomplished, he proceeded with his master's truck and the packages destined for shipment to the station, and was only a few blocks distant therefrom when the fatal injury occurred.

The Commission found that the street on which the accident happened was not more hazardous than any other route of travel between the points where the duties of his employment required the deceased to be. The employee was not exposed to any additional risk in being where he was at the time of the

injury and had broken no rule or regulation of his employer. Under the circumstances disclosed, the conclusion is irresistible that the accident arose out of and in the course of the employment.

The award of the Commission is affirmed.

*Affirmed.*

EPES, J., dissenting.