# Richmond

W. D. Tyree v. Commonwealth of Virginia, Department of Highways.

March 28, 1935.

Present, Holt, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*S. D. Timberlake, III,* for the plaintiff in error.

*Sinnott & May,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This is an appeal from an order of the Industrial Commission denying the petitioner compensation for an injury suffered while in the employ of the appellee. The undisputed facts may be stated as follows:

Petitioner was employed by the appellee as laborer at a quarry near Lexington, Virginia. His duties were to assist in the loading of stone from the stone pile at the quarry on to trucks to be transported to a crusher. If any of the stones were too large to be run through the crusher it was also his duty to break them into smaller pieces before they were loaded on the truck. At the time petitioner was injured a truck had backed up to the stone pile to be loaded when petitioner observed, on the side of the truck where he was working, a stone lying within three or four feet of the rock pile which was too large to be loaded without breaking it up. He thereupon procured a sledge hammer with which to break it, but before doing so he noticed a small piece of dynamite attached to the stone by a sliver of shale. Believing that the dynamite was dead, for the reason that he saw water on the stone, petitioner took a sprawl fork, which he was using to load the stone on the truck, and endeavored to knock the piece of loose shale off the rock in order to remove the dynamite from it. Instead of striking the shale at which he aimed, petitioner struck the dynamite held by the shale, causing it to explode and seriously injuring him, resulting in the total loss of the vision of both eyes.

Hearing was had before Commissioner Nickels, who reported adversely to the claimant, and upon appeal the application was reviewed by the full Commission, when a

majority of the Commission, composed of Nickels and Dean, with Kizer, chairman, dissenting, affirmed the report of the hearing Commissioner, denying compensation on the ground that the injury suffered by the claimant did not arise out of and in the course of his employment.

The question of whether an injury arises out of and in the course of the employment within the meaning of the Workmen's Compensation Act (Code 1930, section 1887 (1) *et seq.*, as amended) has been discussed in such a multitude of conflicting decisions that it is now generally conceded by the courts that the decisions only serve to leave the subject in a hopeless state of confusion, and precedents are, therefore, of little value in the determination of any particular case. In this state of disharmony the Minnesota court refuses to review the decisions in England and in this country, and our own court, speaking through Judge Burks in *King* v. *Empire Collieries Co.*, 148 Va. 585, 139 S. E. 478, 479, 58 A. L. R. 193, has declared its purpose to follow the example of the Minnesota court (*State* v. *District Court*, 134 Minn. 16, 158 N. W. 713, L. R. A. 1916F, 957) and the rule laid down by Lord Chancellor Haldane, who is quoted as saying: "Having regard to the conflict which exists between judicial opinions expressed in some of the decided cases, the only safe guide appears to me to be the language of the act of parliament itself." See also, 28 R. C. L., page 799.

In this connection, however, it seems pertinent to quote from *Ridley* v. *Guano Co.*, 2 O. I. C. 460, where, in discussing this question, it is said: "The rule is that the employee must be engaged in the course of his employment when the injury occurs, within the period of his employment, at a place where he may reasonably be, and while he is reasonably performing the duties of his employment, or is engaged in doing some work incidental to it. It does not extend, however, to his undertaking to operate a dangerous piece of machinery or a dangerous instrumentality which other persons are employed to manage or operate."

And while, in order to obtain compensation the em-

ployee must show not only that the injury occurred in the course of the employment, but that it arose out of the employment, it is universally held by the courts in construing the compensation acts that the employee is entitled to its benefits if the injury occurred while he was reasonably performing the duties of his employment, or engaged in doing something incidental thereto. That the injury in the case at bar occurred within the period of his employment, and at a place where he might reasonably be, cannot be disputed. The question now is, therefore, whether or not the attempt on the part of the plaintiff to remove the particle of dynamite from the stone for the purpose of breaking it in order that it might go through the crusher can be considered as an act incidental to the work in which he was engaged, or separate and distinct from his duties.

It is argued that it was the custom in the quarry, whenever any of the workmen found dynamite, that they were to report it to the quarry foreman, in order that he might use it if it was of any value, and if of no value that he might otherwise dispose of it. Mr. Garrett, the foreman, testified that he had always done the loading and shooting of dynamite himself, and he told the men that if they found any dynamite to tell him so that he could get it away; that he thought all of them understood the rule that he was to put up the dynamite and take it away, but he could not say that he told all the men that.

It is also testified by Mr. Hanger, the engineer at the quarry, that they tried to be careful in the handling of dynamite, and instructions had been gotten out in the last twelve months that all dynamite should be handled by the foreman in charge of the work, or by someone expert in the handling of dynamite, and that any material that is found after the shot is turned over to the foreman, Mr. Garrett, and if it is good dynamite they can use it over again, but if it is in rock, or is wet, or in mud or anything, it is always put in water so as not to endanger anyone; that he had never talked to the petitioner about what he was supposed to do in

handling dynamite in rocks, nor had the foreman ever talked to him about it.

The Workmen's Compensation Act discards the theory of fault or negligence on the part of either the employer or employee as the basis of liability. 28 R. C. L., page 785. "By it the question of the negligence of the employer is eliminated, the common-law doctrines of the assumption of risk, fellow servants and contributory negligence are abolished, and the rules of evidence are laxly enforced * * *." *Humphrees* v. *Boxly Bros. Co.*, 146 Va. 91, 135 S. E. 890, 891, 49 A. L. R. 1427; *Sundine's Case*, 218 Mass. 1, 105 N. E. 433, L. R. A. 1916A, 318. The question, therefore, of whether the petitioner was negligent in attempting to remove the dynamite from the rock is not involved. Though he may have been guilty of gross negligence, such conduct does not bar him from receiving compensation, if the act out of which the injury arose was incidental to the duties of his employment, and whether an injury is incidental depends upon the particular facts of each case. *Railway Express Agency* v. *Lewis*, 156 Va. 800, 159 S. E. 188, 76 A. L. R. 350.

The evidence in this case is that the petitioner was in the act of loading stone on the truck when he found the rock with the dynamite on it lying within a few feet of the base of the pile which was to be loaded, and it was testified that it was not an unusual thing that a rock would roll that distance from the pile. The evidence is that the petitioner, when he found any rock too large to go through the crusher in the process of loading the truck, was supposed to break it up in smaller pieces. When he found this rock with the dynamite on it his first thought was to break it up as he was expected to do, and he borrowed a hammer for that purpose. If the rock had not had any dynamite on it, and he had been injured in breaking the rock by a piece of it flying into his eye, it seems to us clear that the injury would then have been incurred in the course of his employment and have arisen out of it. With the idea in mind that it was his duty to break the rock up, it seems only natural that the peti-

tioner, when he saw the dynamite on it which he thought was dead, should have undertaken to remove the dynamite and proceed to break the rock as he was expected to do. His attempt to remove the dynamite, therefore, bears a close relation to the duties of his employment and it seems to us that it would be taking too narrow a view to say that the injury did not arise out of, as well as in the course of, his employment, under the circumstances. His action in attempting to remove the dynamite may appear to have been gross negligence on his part, but that renders the cause of injury no less within the purview of the statute.

In 28 R. C. L., page 797, it is said that the leading authority on the definition of the terms now under discussion is *McNicol's Case*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, which has been cited and quoted in many opinions. In that case the Massachusetts court says: "In order that compensation may be due the injury must both arise out of and also be received within the course of the employment. Neither alone is enough. It is not easy * * * to give a comprehensive definition of these words * * *. An injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury * * *. If the injury can be seen * * * to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment * * *. The causative danger must be peculiar to the work, and not common to the neighborhood * * *. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

This definition, it seems to us, is about as comprehensive

and accurate as can be given to be applied as a general rule to cases of this sort.

Looking back upon the event which caused the injury in the instant case, we think that it appears to have had its origin as a risk connected with the petitioner's employment and to have flowed from that source as the rational consequence, for the reason that it appears from the evidence that it was not uncommon after a blast was set off to find loose pieces of dynamite lying around the quarry, or lodged in the stone the workmen were required to handle. This being the case, it seems apparent that every workman in the quarry was more or less exposed to the risk of injury from these pieces of dynamite while engaged in the performance of their duties. And while it is true that the workmen were supposed when they found dynamite to put it aside and call it to the attention of the foreman, that rule did not eliminate the risk on the part of the workmen of coming in contact with a piece of the explosive and the danger incidental thereto.

But it is contended that the claimant is not entitled to compensation because of his willful misconduct in disobeying the alleged rule as to the disposition of dynamite. This might be true if knowledge of the rule had been brought home to the petitioner but, as seen, neither the engineer nor the foreman at the quarry could say that the petitioner knew of the existence of this regulation, even if it could be termed a positive rule of conduct for the workmen,

The case on this point is controlled by *King* v. *Empire Collieries Co.*, 148 Va. 585, 139 S. E. 478, 479, 58 A. L. R. 193, where it was held that the term "willful misconduct" "covers something more than negligence, however gross * * * something more than the mere exercise of the will in doing the act * * *. It involves the idea of premeditation and determination to do the act, though known to be forbidden. There cannot, however, be a willful failure to perform an unknown duty." Neither does it appear, moreover, that the alleged regulation was approved by the Industrial Commis-

sion, as the statute (Code, section 1887 (14)) requires in order to make it applicable to the question here raised.

It is next argued that the event which destroyed the vision of the petitioner was not an accident within the meaning of the statute, for the reason that the petitioner brought it about by his own deliberate act, the result of which he could or should have foreseen.

As in the case of other language used in the statute, the question of what constitutes an accident within the purview of the Workmen's Compensation Act has been discussed and passed on in innumerable decisions, and it is generally conceded, as said in *Big Jack Overall Co.* v. *Bray,* 161 Va. 446, 171 S. E. 686, 690, that no exact, comprehensive, legal definition of the term can be found as applied to all circumstances, but Justice Hudgins, speaking for this court, concludes that the definition adopted by the Pennsylvania court in *McCauley* v. *Imperial Woolen Co.,* 261 Pa. 312, 104 Atl. 617, 622, is perhaps the most accurate that has been made, where it is said: "If the incident which gives rise to the injurious results complained of can be classed properly as a 'mishap,' or 'fortuitous' happening— an 'untoward event, which is not expected or designed'— it is an accident within the meaning of the Workmen's Compensation Act."

"While there has been a great deal of discussion as to the import of the term 'accident' in the phrase 'personal injury arising out of the employment,' it is evident that the word must be taken to be descriptive of the mental state of the employee at the time of the calamity. An accident is something which is unforeseen and, as has been noted, the element of the event being unforeseen by the plaintiff forms the basis of every right of recovery." 28 R. C. L. 787. See notes L. R. A. 1916A, 32, 227; L. R. A. 1917D, 103; L. R. A. 1918F, 867. See also, *U. S. Mutual Accident Asso.* v. *Barry,* 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60, where the insured, a young man in good health, jumped from a platform between four and five feet high to the ground and sustained an injury which caused his death. It was held that

although the insured deliberately jumped from the platform, since there was evidence tending to show that he landed in a somewhat different manner from that he intended, the jury was justified in finding that the death was caused by an accident.

Applying this definition to the event in the instant case, while the question has not been without difficulty, we conclude that the injury sustained by the claimant was by accident within the meaning of the act, for the reason that the petitioner, believing the dynamite was dead when he attempted to remove it from the stone did not anticipate or foresee the result of his act. While it may be termed an act of gross negligence or stupidity on his part, we do not think it can be said that he anticipated that the dynamite would explode unless we assume that it was his deliberate purpose to commit suicide, or seriously injure himself as he did. The evidence shows that the employee had only been working at the quarry every other week for about two months, was inexperienced in handling explosives, had not been warned about finding dynamite in rocks, and had never before seen a rock with dynamite in it.

While we realize that the questions involved in this case are close from their legal aspects, after much deliberation we feel that the liberal construction which should be placed upon the act in order to carry out its beneficent purposes requires that the legal questions involved should be resolved in favor of the claimant and that the order of the Industrial Commission should be reversed, and the case remanded for further proceedings in accordance with the views expressed in this opinion.

*Reversed and remanded.*

HOLT, J., dissenting.

Tyree was employed from May 15, 1933, until July 14, 1933, the day on which he was hurt. He worked continuously in a quarry where dynamite was constantly used and was familiar with its explosive properties. His work

consisted in moving broken rock which was to be put through a rock crusher. He testified as to it, in part, as follows:

"Q. Please tell the Commissioner about this accident of yours; state in detail how the whole thing happened and what you did and what you saw.

"A. The rock was lying down at the foot of the pile, and the stick of dynamite was on the top or side of it, and you could knock it off with a sprawl bar.

    \*      \*      \*      \*      \*      \*      \*      \*

"Q. You were going to break up the rock after you had released the dynamite, is that right?

"A. Yes, sir.

"Q. And you did hit it with the rake?

"A. Yes, sir.

"Q. And your object was to knock loose the dynamite?

"A. Yes, sir.

    \*      \*      \*      \*      \*      \*      \*      \*

"Q. How did you know that the dynamite was in the rock?

"A. It was lying there on the top where you could see it.

"Q. And that was the first thing you saw?

"A. Yes, sir.

    \*      \*      \*      \*      \*      \*      \*      \*

"Q. And you got there and you saw this rock with a piece of dynamite in it, which you say, was right near the pile, and, instead of going on and loading the truck as you were supposed to do, you attempted to break this rock with the dynamite in it?

"A. I aimed to knock that sheet off and come to the dynamite and then break it; I didn't aim to hit the dynamite that hard to shoot it off."

In the finding of the Commission is this statement of facts: "This piece of rock was lying at the foot of the pile and the piece of dynamite was on the top side of it and he intended to knock it off with a sprawl bar. He borrowed a hammer for the purpose of bursting the stone but he planned to knock the dynamite loose with his sprawl fork and

while in the act of doing it he struck the dynamite causing the explosion."

Unquestionably the injury from which Tyree suffered arose out of and in the course of his employment. But something more is necessary. Before he can recover it must appear that there was an accidental injury. An accident is something which should have been unexpected. The inevitable result of an act which should have been foreseen by a man of even mediocre intelligence is not an accident.

In *U. S. Mutual Accident Asso.* v. *Barrie,* 131 U. S. 100-121, 9 S. Ct. 755, 762, 33 L. Ed. 60, the Supreme Court said: "If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means." One who is stung as he sticks his hand in a hornet's nest has suffered no accident and for the same reason a man who beats upon a stick of dynamite stuck in a rock has suffered no accident when he is hurt by its explosion. It is no answer for him to say that he thought it was dead and would not explode. One might as well say that he thought the hornets were asleep.

This was the conclusion reached by the Industrial Commission, to which judgment this court has given little weight. Its findings of fact and its conclusion based thereon are sound, and for that reason I am constrained to dissent.