# Richmond

EARL H. HANN, AN INFANT, ETC. v. TIMES-DISPATCH
PUBLISHING COMPANY, INC., ET AL.

March 12, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Chinn
and Eggleston, JJ.

The opinion states the case.

*T. Dix Sutton,* for the plaintiff in error.

*Sinnott & May* and *Benjamin R. Bruner,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Earl H. Hann, a newspaper delivery boy for the Times-Dispatch Publishing Company, Inc., was injured while riding in the automobile of one Bartlam, an employee of the said company, and brought an action at law against both the company and Bartlam to recover damages for his injuries. A plea in abatement was filed asserting that Hann was an employee of the Times-Dispatch Publishing Company, Inc., that his injuries were incurred in an accident which arose out of and in the course of his employment, and that hence his sole remedy was by application to the Industrial Commission of Virginia for an award under the provisions of the workmen's compensation law (Acts 1918, ch. 400, as amended).

Upon the issue joined on this plea all matters of law and fact were submitted to the court. To review the judgment sustaining the plea and dismissing the action this writ has been awarded.

The agreed facts are these:

It was Hann's duty to report at 5:30 o'clock every morning to a sub-station at 310 Shields avenue, in the city of Richmond, where he was given a number of papers to be delivered to a certain number of subscribers along a designated route. The list of subscribers was the property of the newspaper. The carrier was not allowed to deviate from his route which he was required to complete by 7 A. M. For this purpose he usually rode his own bicycle.

At the end of each week the carrier collected from each subscriber a certain amount, remitted to the company a portion thereof and retained the balance for his services. All collections were at the risk of the carrier who had the right to solicit new subscribers along his route.

Hann and forty-six other carriers, all working under similar contracts, were under the direct supervision of one Raymond Bartlam, who had the right to "hire and fire" them. Bartlam was employed and paid a salary by the newspaper company. It was his duty to see that the

carriers were on the job each morning and to distribute to each the number of papers required for his particular route. In case any carrier failed to show up on time, as it frequently happened, Bartlam would look him up and transport him to the sub-station in his (Bartlam's) automobile for which he was paid an allowance by the newspaper company. Hann knew nothing of this arrangement between Bartlam and the company. He usually rode his own bicycle to the sub-station and had never before been taken there by the supervisor.

On the date in question Bartlam arrived at the sub-station at 4:45 A. M. and sorted out the number of papers required for each carrier. Hann and another boy by the name of Chambers had not arrived by 5:30 A. M. Shortly thereafter Bartlam started out to look for them. He picked up Chambers on the street and Hann at the latter's home. While proceeding back to the sub-station by the most direct route, and while Bartlam was driving, the car met with an accident in which Hann was injured.

It is further agreed that the newspaper company was subject to the provisions of the workmen's compensation law, and that neither it nor Hann had given notice of any intention not to be bound thereby.

It was on these facts that the trial court held that Hann was an employee of the newspaper company, that the accident arose out of and in the course of his employment, and that his remedy was under the workmen's compensation law and not in a common-law action for damages.

First, we think Hann was an employee of the newspaper company and not, as he claims, an independent contractor.

Whether the existing status is that of an employee or that of an independent contractor is governed, not by any express provision of the workmen's compensation law, but by the common-law. *Crowder* v. *Haymaker,* 164 Va. 77, 79, 178 S. E. 803. No hard and fast rule can be laid down for ascertaining whether the status

is one or the other. It must be determined from the facts of the particular case in the light of well settled principles.

In 14 R. C. L., pp. 67, 68, section 3, it is said, "The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor. * * * In this connection the ultimate question is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control."

In two recent cases we have said, "The ordinary test is this: 'Who has the power to control and direct the servants in the performance of their work?'" *Crowder v. Haymaker,* 164 Va. 77, 80, 178 S. E. 803, 804; *Epperson v. DeJarnette,* 164 Va. 482, 486, 180 S. E. 412.

In the instant case the requisite "power to control" was unquestionably in the newspaper company. Both the route and the list of customers were its property. Hann could not deviate therefrom. He had to report at a certain time and complete his route by a certain hour. There is no suggestion that he had the right to sublet his work. The services were of a personal nature, and, if unsatisfactory, Hann was subject to discharge at the will of the supervisor. This was true of the forty-six other carriers who were employed on the same basis.

In *Press Publishing Co. v. Industrial Accident Comm.,* 190 Cal. 114, 210 P. 820, the highest court of California held that a route carrier of newspapers, employed under almost the identical circumstances, was an employee and not an independent contractor. What was there said (210 P. 820, at page 823) is quite pertinent here: "As previously indicated, it is not the actual exercise of control, but the right of control—that is to say, the potential power of control—which is important in a determination of whether or not the status of an employee or independent

contract [or] exists. * * * One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if° instructions were given, they would have to be obeyed. In the instant case, it is undisputed that the Press Publishing Company had the power to hire and the power to discharge its carriers for unsatisfactory service, and in this regard Benefiel was in no better position than the other carriers. This power of discharge made obligatory any instructions given, for it gave to the Press Publishing Company the power to require obedience to those instructions and insured their being carried out. * * *

"The fact that Benefiel furnished his own transportation does not, of course, affect his status as employee."

In *Duchene* v. *Times-Dispatch Publishing Company,* 13 O. I. C. 85, and in *News Leader* v. *Mahon,* 15 O. I. C. 434, the Industrial Commission of Virginia has held that route carriers of newspapers are employees and not independent contractors.

Cases involving newsboys who purchase their papers and sell them for a profit on the streets, such as *New York Indemnity Co.* v. *Industrial Accident Comm.,* 213 Cal. 43, 1 P. (2d) 12; *Birmingham Post Co.* v. *Sturgeon,* 227 Ala. 162, 149 So. 74; *Creswell* v. *Charlotte News Publishing Co.,* 204 N. C. 380, 168 S. E. 408, cited by the plaintiff in error, are so readily distinguishable from those of route carriers as not to require discussion.

Next, we think the trial court was likewise right in holding that the accident arose out of and in the course of Hann's employment.

In *Kent* v. *Virginia-Carolina Chem. Co.,* 143 Va. 62, 66, 129 S. E. 330, we held that the general rule (that an employee's injuries sustained while going to and from work were not compensable) is subject to an exception where the means of transportation is furnished by the employer. See also, *Railway Express Agency* v. *Lewis,* 156 Va. 800, 802, 159 S. E. 188, 76 A. L. R. 350. The instant case comes within that exception.

Under the terms of his contract of employment Hann was due to be at the station at 5:30 A. M. to start on his route which must be completed by 7 A. M. He was late. It was Bartlam's duty to provide a carrier. He could have discharged Hann for his tardiness and hired another in his place. But the time was short. He knew that Hann had probably overslept, as other carriers had previously done, and was still available. So he proceeded to Hann's home and, in the course of his own duties and on behalf of the newspaper company, offered to furnish to the employee the means of transportation to the place of work. If Hann had refused to go with Bartlam he was subject to discharge. The employee accepted the means of transportation thus offered to him by his employer and got into the car. He was then just as much under the supervision of Bartlam as when at the sub-station or out on his route. He was just as much about his master's business as was Bartlam, as to whose status there can be no dispute.

We think the risk or hazard of the accident was one incident to, that is, arose out of and in the course of Hann's employment, and came within the purview of the workmen's compensation law.

The judgment of the lower court is right and should be affirmed. It is so ordered.

*Affirmed.*