## STATE FARM MUT. AUTOMOBILE INS. CO. v. BRAXTON et al.

### No. 5709.

Circuit Court of Appeals, Fourth Circuit.

April 1, 1948.

Ralph T. Catterall, of Richmond, Va. (Williams, Mullen & Hazelgrove and Guy B. Hazelgrove, all of Richmond, Va., on the brief), for appellant.

George E. Allen, Jr., and George E. Allen, both of Richmond, Va. (Allen & Allen, and M. J. Fulton, all of Richmond, Va., on the brief), for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Herman Braxton, in a state court, recovered judgment for damages for personal injuries against J. E. Flippo. Since Flippo held a public liability policy issued by the State Farm Mutual Automobile Insurance Company (hereinafter called the insurer), Braxton garnisheed the insurer in the state court and insurer thereupon removed the case to the United States District Court for the Eastern District of Virginia.

In the District Court Braxton filed a complaint, to which was attached a copy of the insurance policy, and the insurer filed an answer containing five defenses. The parties agreed that Braxton's testimony in the state court was true. The insurer, alleging that there was then no dispute as to any material fact, moved for a summary judgment in its favor, while Braxton moved to strike insurer's first four defenses.

The District Court denied insurer's motion for a summary judgment in its favor and granted Braxton's motion to strike the first four defenses of insurer. The case was then set for hearing before a jury on insurer's fifth defense which involved the question of whether the insurer had waived the written notice of the accident which the policy required Flippo to give "as soon as practicable." A verdict for Braxton was found by the jury, judgment thereon against the insurer was duly entered and the insurer has appealed to us.

Insurer has abandoned defenses numbered one and two. Its defenses numbered three and four relate to the exclusion clause of the policy. Since we think that insurer was entitled to a summary judgment under this clause, it is unnecessary for us to consider or to discuss the fifth defense which deals with the lack of notice and the question of the waiver of notice.

The exclusion clause of the policy, to which we now address ourselves, reads: "The policy does not apply: (d) Under coverage A, to bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of the automobile;"

Flippo employed Braxton to help in sawing and delivering wood. Braxton was to receive wages at the rate of $3 per day, and his working hours were to be from 8 a. m. until 5 p. m. The accident in question occurred on November 8, 1943, the first day of Braxton's employment by Flippo.

That day, shortly before 5 p. m., Flippo and Braxton delivered the last load of wood on the Petersburg Pike, near Stop 3, a short distance from the intersection of the Petersburg Pike and Hull Street, in the City of Richmond, Virginia. Flippo's home was on Midlothian Pike, about three-fourths of a mile west of the City limits, while Braxton's home was to the northeast, on Church Hill, in the City of Richmond, some distance from the intersection just mentioned. Accordingly, upon reaching the intersection, it was necessary for Flippo to turn left and proceed in a westerly direction to get to his home, while Braxton had to go in a northeasterly direction in order to reach his home.

At or about 5 p. m., on the day in question, while Braxton and Flippo were on the empty truck driving toward the Hull Street intersection, Flippo told Braxton that it was quitting time and that he could go. Flippo suggested that Braxton might catch a street-car to Braxton's home. Braxton replied that he had no money and requested that Flippo advance 7 cents, the amount of the street-car fare. Flippo would not assent to this request of Braxton but then agreed, as Braxton suggested, to transport Braxton to a point on the Midlothian Pike, near Flippo's home, where, according to Braxton, he could pick up a ride home from a friend of his, one Linwood Epes who worked nearby. Once again, further on the ride, Flippo suggested that Braxton take the streetcar, without an offer by Flippo to advance the 7 cents for carfare but this suggestion was not taken by Braxton. The journey thereupon continued past the Hull Street intersection, with both Flippo and Braxton on the truck, towards the spot where Braxton was to leave the truck and seek a ride home from his friend, Epes.

While Flippo was driving the truck, some motor trouble developed. Flippo thereupon instructed Braxton to drive the truck.

Braxton obeyed, and Flippo stood on the running-board of the truck, pouring gasoline from a bottle into the carburetor. While Braxton was driving, the truck caught fire and Flippo ordered Braxton: "Pull over to the side and stop." Again Braxton obeyed and Flippo then told Braxton "Give me a crocus sack." Braxton gave Flippo the sack upon which Braxton was sitting and then, upon further instruction from Flippo, Braxton got out of the truck. Flippo tried to extinguish the fire with the sack. The sack caught fire and Flippo threw the burning sack, saturated with gasoline, against Braxton, who was standing on the ground nearby, and Braxton sustained severe burns and injuries, which necessitated the amputation of a leg.

■ It is well settled that the primary purpose of an exclusion clause in a public liability policy, such as is now before us, is to draw a sharp line between employees, who are excluded, and members of the general public. As Judge Parker, speaking for our Court in Lumber Mutual Casualty Ins. Co. v. Stukes, 4 Cir., 164 F.2d 571, 573, said: "The purpose of the exclusion clause is to limit coverage to liability for injury to members of the general public and to exclude liability to employees of the insured."

Likewise, this policy expressly excluded "any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law." Flippo here, because he did not have the required number of employees, did not come under the Virginia Workmen's Compensation Act. Code 1942, § 1887(1) et seq. Had Flippo, however, been within the ambit of this Act, we feel confident that the Supreme Court of Appeals of Virginia would have held that the accident here involved would be within the purview of, and compensable under, this Act.

In Hann v. Times-Dispatch Publishing Co., 166 Va. 102, 184 S.E. 183, the plaintiff, a newsboy, overslept one morning; the employer's supervisor went to get the newsboy and the accident happened on the way to the sub-station of the employer. Said Associate Justice Eggleston 166 Va. at page 107, 184 S.E. at page 185: "Next, we think

the trial court was likewise right in holding that the accident arose out of and in the course of Hann's employment.

"In Kent v. Virginia-Carolina Chem. Co., 143 Va. 62, 66, 129 S.E. 330, we held that the general rule (that an employee's injuries sustained while going to and from work were not compensable) is subject to an exception where the means of transportation is furnished by the employer. See, also, Railway Express Agency v. Lewis, 156 Va. 800, 802, 159 S.E. 188, 76 A.L.R. 350. The instant case comes within that exception."

And, again 166 Va. at page 108, 184 S.E. at page 185: "The employee accepted the means of transportation thus offered to him by his employer and got into the car. He was then just as much under the supervision of Bartlam as when at the substation or out on his route. He was just as much about his master's business as was Bartlam, as to whose status there can be no dispute.

"We think the risk or hazard of the accident was one incident to, that is, arose out of and in the course of Hann's employment, and came within the purview of the Workmen's Compensation Law."

Compare the language of Circuit Judge Sibley in Johnson v. Aetna Casualty & Surety Co., 5 Cir., 104 F.2d 22, 23: "The transportation to and from the mill was not expressly a term of the hiring of the hands. * * * It has often been held that employees riding free to and from their work in the employer's vehicle continue to be employees and are not passengers, (citing cases); and when the question arises under the workmen's compensation statutes they are held to be still in the course of their employment." (Again citing cases.) See, also, State Farm Mutual Automobile Insurance Co. v. Brooks, 8 Cir., 136 F.2d 807; Lumber Mutual Cas. Ins. Co. v. Stukes, 4 Cir., 164 F.2d 571, 574. Compare, Clinton Cotton Oil Co. v. Hartford Accident and Indemnity Co., 180 S.C. 459, 186 S.E. 399.

■ The right of control has been emphasized as a test in a number of cases. Hann v. Times-Dispatch Publishing Co., 166 Va. 102, 106, 184 S.E. 183; Crowder v. Haymaker, 164 Va. 77, 80, 178 S.E. 803; Press Publishing Co. v. Industrial Accident Commission, 190 Cal. 114, 210 P. 820.

Clearly, it would seem that in the instant case, such a right of control existed. When Flippo instructed Braxton to drive the truck, pull over to the side and stop, hand over the crocus bag and get out of the truck, the obedience of Braxton was in each instance prompt and complete. Surely Braxton was then engaged in "the operation, maintenance or repair" of the truck. If, as we think, Braxton was then an employee within the exclusion clause of the policy, it would be utterly unreasonable to hold that this relationship ceased and he became a mere member of the general public the very instant he, on the instruction of Flippo, got out of the truck and stood nearby on the ground.

Appellees rely upon Ayres v. Harleysville Mutual Casualty Co., 172 Va. 383, 2 S.E.2d 303, 305; but that case is not in point. The exclusion clause there applied "to any employee or employees of the insured while engaged in operating or caring for any of the automoblies covered by this policy"; and the only question was whether an employee who rode along with the truck driver for the purpose of rendering assistance to him if necessary fell within the clause. In holding to the contrary, the Virginia court construed the clause strictly against the company and interpreted it as applying only when the employee was himself actually engaged in operating or caring for the truck. Manifestly that decision can have no application here.

In Campbell v. American Fidelity and Casualty Co., 212 N.C. 65, 192 S.E. 906, the plaintiff was riding as a passenger upon the bus with a free pass given to her for services performed for the bus company, which had no connection whatever with the trip she was taking when injured. In Hoosier Casualty Co. v. Miers, 217 Ind. 400, 27 N.E.2d 342, 343, Miers, a bartender in insured's employ was injured when Miers was a guest of his employer on a hunting trip. The question and factual situation in Mayer v. Puryear, 4 Cir., 115 F.2d 675 (decided by our Court) were utterly different from the instant case.

Our conclusion, then, is that Braxton was here an employee of Flippo, came within the exclusion clause of the policy and the

insurer's motion for a summary judgment in its favor should have been granted. The judgment of the District Court is, accordingly, reversed and the case is remanded to that court with instructions to grant the motion of appellant-insurer, State Farm Mutual Automobile Insurance Company, for a summary judgment and to enter judgment in its favor.

Reversed and remanded.