BENTON, Judge,
dissenting.
“The [Workers’ Compensation] Act protects ‘employees,’ as defined in the Act.” Intermodal Services, Inc. v. Smith, 234 Va. 596, 600, 364 S.E.2d 221, 223 (1988). As pertinent to this case, “[e]very person ... in the service of another under any contract of hire ..., written or implied” is an employee under the Act. Code § 65.2-101.
As a general rule, a person is an employee if [the person] works for wages or a salary and the [individual or entity] who hires [the person] reserves the power to fire [the *235 person] and the power to exercise control over the work to be performed. The power of control is the most significant indicium of the employment relationship; other factors merely help to elucidate the manner and degree of control.
Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982). The record unambiguously discloses that Walker was paid an hourly wage to “provide services only when and as authorized.” However, the majority finds that the facts did not prove the requisite level of “control by the County over the means and methods by which [Walker] performed the services she contracted to provide.” I disagree.
‘“[T]he ultimate question is not whether the employer actually exercises control over the doing of the work, but whether [the employer] has the right to control.’ ” Hann v. Times-Dispatch Publ’g Co., 166 Va. 102, 106, 184 S.E. 183, 184-85 (1936) (citation omitted). The facts of each case are important in determining the issue of control. See id. at 106, 184 S.E. at 184. Furthermore, when the record contains credible evidence that supports the commission’s factual findings, those findings are “conclusive and binding as to all questions of fact.” Code § 65.2-706; see James v. Capitol Steel Constr. Co., 8 Va.App. 512, 515, 382 S.E.2d 487, 488 (1989).
The evidence proved that Walker was a “companion aide.” The Director of Social Services testified that the County’s Department of Social Services defined the scope of Walker’s services and that the case worker, who was assigned to Pugh (the “client”), gave Walker her instructions. The director testified that the social worker initially would meet with the client to assess the client’s needs. The social worker would then interview the companion aide to explain the authorization, discuss “all aspects ... with the [companion aide],” and sign the forms. Typically, the case worker would introduce the companion aide to the client. Unless the companion aide was requested by the client, the social worker would choose which companion aide would be offered a particular assignment. Thus, the social worker had significant control over *236 Walker’s assignments and the number of hours she worked. Accord Sparlin Chiropractic Clinic, P.C. v. TOPS Personnel Servs., Inc., 193 Ga.App. 181, 387 S.E.2d 411, 412-13 (1989) (holding that a person was an employee of a temporary placement agency because the agency paid him and “controlled his assignments”).
The majority concedes that the County controlled the number of hours Walker worked but dismisses that fact in its discussion of the elements of control on the ground that the reason for the limits was the County’s “fiscal constraints.” Regardless of what the County’s motivation was, however, the fact remains that the County controlled Walker’s hours. Indeed, every employer suffers from “fiscal constraints.”
The evidence also proved that after the case worker assessed the client’s needs, the case worker would discuss with the companion aide the services to be performed. In the agreement between Walker and the County, Walker was required to “provide services only when and as authorized.” Moreover, the County’s representative was required to monitor the progress and give direction “if there [were] difficulties or problems.” The County also had the power to discharge Walker for unsatisfactory services. Thus, the instructions to the companion aide were obligatory terms and conditions of employment.
“ ‘One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed.’” Hann, 166 Va. at 107, 184 S.E. at 185 (citation omitted). The evidence establishes that the agreement gave the County the power and the right to discharge Walker if she disobeyed the County’s instructions. Thus, the County retained the “right to control.” Id. .
The majority states that the County did not control the services Walker performed because the services were dictated by the client’s needs. The fact that an individual client’s needs determined what services were required does not negate the inescapable conclusion that the content of the instruc *237 tions given to Walker by the social worker governed the means and methods of performance.
The commission made the following findings, all of which are supported by credible evidence in the record:
We find that the County Department of Social Services exerted the requisite control over [Walker’s] activities. When [Walker] applied for and was accepted as an approved companion aide, the parties signed a contract granting the County the right to terminate her services, requiring two weeks notice before ceasing to provide services, establishing the services authorized, and setting an hourly wage. The County’s social worker determined the types of services to be provided for the client. For example, [Walker] was not authorized to do heavy housework, nor was she allowed to work for the client more than fifteen hours per week. She could not find a substitute herself, but had to contact the social worker if she was unavailable. In this case, when [the client’s] regular aide was going on vacation, the social worker called [Walker] and assigned her to provide services to the client for two weeks. Although the record suggests that [Walker] could have declined this particular assignment, this is the only element of control retained by [Walker], far outweighed by the other indicia of control retained by the County.
[Walker] was not paid for the results of her work as an independent contractor, but was assigned to perform particular tasks for a particular length of time, for which she was paid on an hourly basis. Although there was not daily supervision, the social worker exercised oversight and control over the provision of services, visiting whenever there were problems and at least once every three months. We do not find it relevant that the County constructed forms which refer to the companion aides as “vendors” and their time cards as “vendor invoices,” since this terminology is designed clearly to establish that the companion aides are not employees and to distinguish them from other County employees who receive higher pay and benefits from a separate payroll. We further find that the provision of *238 companion care services is a regular part of the business of the County, which provides a wide range of services to its residents, including home-based care of the indigent disabled.
The evidence and the reasonable inferences to be drawn from the evidence proved that the County had the right to instruct Walker as to the work that was to be done and the manner in which that work would be performed. The County also had the power to give direction if Walker and the client experienced difficulties or problems. ‘Where reasonable inferences may be drawn from the evidence in support of the commission’s factual findings, they will not be disturbed by this Court on appeal.” Hawks v. Henrico County Sch. Bd., 7 Va.App. 398, 404, 374 S.E.2d 695, 698 (1988).
Notwithstanding the requirement of “good cause” for termination, that factor was not an impediment to the commission’s finding that Walker was not an independent contractor. The Supreme Court clearly stated that “limitations upon ... rights of termination may not be inconsistent with the existence of an employer-employee relationship.” Gill, 224 Va. at 100, 294 S.E.2d at 844. Indeed, the evidence proved and the commission found that Walker “was assigned to perform particular tasks for a particular length of time for which she was paid on an hourly basis.” The commission also found that the County specified the “types of services” Walker would provide for the client. The evidence further proved, and the commission found, that if Walker was unavailable, she “could not find a substitute herself’; she had to contact the County so that the County could make alternative arrangements. In view of the evidence establishing other substantial indicia of the County’s right to control, the commission’s findings are supported by credible evidence.
Although the majority states that the County “could control only the parameters of the relationship,” no evidence in this record proved that the County could not, for example, specify in detail each service Walker was to provide and schedule the time of day and sequence in which each service was to be *239 performed. Indeed, the evidence undisputedly proved that the County had the power and the right to control because Walker could “provide services only when and as authorized.” Thus, the evidence proved the County clearly retained the right to specify the services. In addition, the County’s right to intervene if a conflict developed between the client and Walker, when viewed together with the right to authorize Walker’s services, manifestly proved that the County retained the right to control the details of Walker’s work, not just “the ends to be achieved.”
Based on the evidence in this record, the reasonable inferences that flow from the evidence, and the commission’s findings, I would hold that Walker was an employee, not an independent contractor. Thus, I would affirm the commission’s award.
I therefore dissent.