COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and Athey
Argued at Norfolk, Virginia

UNPUBLISHED

WILMER PINEDA

v.     Record No. 1561-23-1

DANTE SIDING, LLC, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
JULY 30, 2024

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

R. Barry Rowell (Klein Rowell & Shall PLLC, on brief), for
appellant.

Daniel E. Lynch (Daniel E. Lynch Law Firm, P.C., on brief), for
appellees.

Wilmer Pineda challenges the Virginia Workers' Compensation Commission's denial of his

claim for benefits, based on a finding that he was an independent contractor and not an employee.

Pineda argues that the Commission misapplied the relevant factors and "clearly . . . erred in

reaching [its] finding." We affirm the denial.

BACKGROUND

In reviewing a decision of the Commission, we consider the evidence and all reasonable

inferences in the light most favorable to the party prevailing below. *Jalloh v. Rodgers*, 77

Va. App. 195, 200 n.2 (2023).

On October 15, 2021, Pineda was installing siding on a two-story residence on behalf of

Samuel Salinas, who operated Dante Siding, LLC. Around 6:00 p.m., Pineda's scaffold failed, and

he fell from about 15 feet to the ground. Pineda was hospitalized for nine days and underwent

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

surgeries to his right leg. He filed a claim seeking temporary total disability benefits and lifetime medical benefits for an injury to his "right lower extremity."

At the hearing on the claim, Salinas[1] argued, in part, that Pineda was not entitled to benefits because he was an independent contractor, not an employee under the Workers' Compensation Act ("the Act"). The evidence demonstrated that Pineda worked for Salinas regularly, seven days per week when weather permitted, and that Salinas would drive him to and from the job site each day. Pineda provided his "own hand tools" to install the siding, including a hammer, square, level, pencil, tape measure, metal hole punch, and tool pouch. He also provided his own hard hat and yellow shirts without "any type of an insignia." Salinas provided the scaffold, ladders, safety harnesses, and siding materials.

Pineda did not require "much, if any" supervision from Salinas. Salinas took Pineda to the job site and gave instructions about "what [he] needed to do," but he did not explain "how to do it." Salinas testified that he did not supervise Pineda, who was "very experienced." Instead, he told Pineda and the other workers "what they [were] supposed to do" on a given day, and "everyone knew what they needed to do." Salinas set the work and pay schedule and paid Pineda $175 per day, or about $130 if they stopped working before 4:00 p.m. Salinas paid Pineda in cash, withheld no deductions from his pay, and did not provide him a W-2 Form. Pineda worked exclusively for Salinas for approximately three years before the accident; they never discussed whether Pineda could work for other people or businesses during that time.

The deputy commissioner found that Pineda's work relationship with Salinas was "more akin to an independent contractor arrangement rather than an employer-employee relationship." Emphasizing that Salinas did not "exert[] a level of control over the means and methods" of

---

[1] The parties stipulated that if Pineda was found to be an employee of Salinas, then Dante Siding, LLC agreed to be the statutory employer and Norguard Insurance would be responsible for the claim. For purpose of this opinion, we refer to the appellee as Salinas.

Pineda's work, the deputy commissioner denied the claim for benefits. The Commission unanimously affirmed, finding that Pineda failed to meet his burden of proving that he was an employee under the Act.

On appeal, Pineda argues the Commission should have concluded that he was an employee under the Act. He insists that his skill and experience did "not negate his status as an employee" even though he could work without "close supervision." Regardless, according to Pineda, Salinas had the "right to control" his work even if he did not frequently exercise that right. Pineda argues that Salinas was the "on-site supervisor" and provided the necessary materials other than "a few small tools." He also stresses that an employer-employee relationship was established by evidence that Salinas drove him to the job site, "told [him] what work to perform," established his "rate of pay" and pay schedule, and "determined when each shift would end."

ANALYSIS

An employee under the Act is any person who is "in the service of another under any contract of hire or apprenticeship, written or implied, whether lawfully or unlawfully employed." Code § 65.2-101. "A claimant seeking benefits . . . bears the burden of establishing he is an employee." *Creative Designs Tattooing Assocs. v. Estate of Parrish*, 56 Va. App. 299, 307 (2010). "What constitutes an employee is a question of law; but, whether the facts bring a person within the law's designation, is usually a question of fact." *Intermodal Servs., Inc. v. Smith*, 234 Va. 596, 600 (1988) (quoting *Baker v. Nussman & Cox*, 152 Va. 293, 298 (1929)). Thus, whether an individual is an employee or an independent contractor "involves a mixed question of law and fact." *County of Spotsylvania v. Walker*, 25 Va. App. 224, 230 (1997). Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "However, the [C]ommission's legal determinations are not binding on appeal

and will be reviewed *de novo*." *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007)).

Although "[a]n independent contractor is not an employee for Act purposes," whether a claimant is "'an employee or an independent contractor is governed[] not by any express provision of the work[ers'] compensation law, but by common law.'" *Creative Designs*, 56 Va. App. at 307-08 (quoting *Hann v. Times-Dispatch Pub. Co.*, 166 Va. 102, 105 (1936)). "No hard and fast rule can be laid down for ascertaining whether the status is one or the other. It must be determined from the facts of the particular case in the light of well[-]settled principles." *Id.* at 308 (quoting *Hann*, 166 Va. at 105-06).

An independent contractor is "employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done." *Id.* (quoting *Epperson v. DeJarnette*, 164 Va. 482, 486 (1935)). An independent contractor is a person "to whom the owner looks *only for results*." *Id.* (emphasis added) (quoting *Epperson*, 164 Va. at 486). By contrast, "[t]he elements of an employment relationship are: (1) selection and engagement of the employee, (2) payment of wages, (3) power of dismissal, and (4) power of control of the employee's action." *Behrensen v. Whitaker*, 10 Va. App. 364, 366 (1990).

The fourth factor—power of control—is the "most significant element bearing on the question." *Purvis v. Porter Cabs, Inc.*, 38 Va. App. 760, 766 (2002) (quoting *Stover v. Ratliff*, 221 Va. 509, 512 (1980)). Indeed, "an employer-employee relationship exists only if the control reserved includes the power to control, not only the result to be accomplished, but also the means and methods by which the result is to be accomplished." *Richmond Newspapers, Inc. v. Gill*, 224 Va. 92, 98 (1982). Other factors include "[w]hether there are deductions from

compensation" and "whether the employer or the work[er] supplies the instrumentalities [and] tools." *Creative Designs*, 56 Va. App. at 309, 310 (third alteration in original). Those factors, however, "merely help to elucidate the manner and degree of control" an employer exerts over the worker. *Id.* at 310 (quoting *Gill*, 224 Va. at 98).

The evidence, viewed in the light most favorable to Salinas, demonstrates that Pineda was an independent contractor to whom Salinas looked "only for results." *Id.* at 308 (quoting *Epperson*, 164 Va. at 486). Pineda did not require "much, if any" supervision from Salinas. Rather, Pineda himself testified that Salinas merely drove him to the job site and gave instructions about "what [he] needed to do," not "how to do it." Thus, instead of satisfying his burden of demonstrating that he was an employee, Pineda's own testimony supports the conclusion that Salinas did not exercise control of the methods by which Pineda accomplished the tasks Salinas set before him. *See id.* at 311 (holding that a worker was not an employee when he "alone prosecuted and directed [his] work and used only his chosen methods to accomplish it"). Pineda's testimony regarding those "fact[s] and the necessary inferences therefrom are binding upon him." *Massie v. Firmstone*, 134 Va. 450, 462 (1922).

Moreover, Salinas's testimony provided a similar account of Pineda's status as an independent contractor. Salinas testified that he did not supervise Pineda, who was "very experienced." Instead, he told Pineda and other similarly situated workers on site "what they [were] supposed to do" on a given day; Salinas testified that "everyone knew what they needed to do." Further supporting the conclusion that Salinas did not exercise the power of control essential to render Pineda an employee was the fact that Pineda largely supplied his own tools to perform the work. *See Creative Designs*, 56 Va. App. at 311 (noting that a claimant's provision of the "instrumentalities, supplies, and tools for his work" indicated independent contractor status); *cf. Uninsured Employer's Fund v. Clark*, 26 Va. App. 277, 281 (1998) (finding a worker to be a

covered employee, based in part on him "using a truck and tools provided by [the employer]"). Salinas did not take any deductions from Pineda's pay. Nor did he provide Pineda a W-2 Form. *See Intermodal*, 234 Va. at 602 (affirming that a worker was not an employee when he did not "complete any forms for payroll deductions" and "[n]o deductions were made from his compensation").

Notwithstanding the above, Pineda insists that Salinas "had the right to direct [him], deciding what tasks would be performed, the time, place, degree[,] and the amount of said services." He relies on *Purvis*, which observed that often "skilled or experienced" employees "seem to be uncontrolled." 38 Va. App. at 772 (quoting *Nelson v. Yellow Cab Co.*, 538 S.E.2d 276, 280 (S.C. Ct. App. 2000), *aff'd*, 564 S.E.2d 110 (S.C. 2002), *overruled on other grounds by Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 676 S.E.2d 700, 702 n.3 (S.C. 2009)). "[Y]et, it will often be found that the employer, in any showdown, would have the ultimate right to dictate the method of work . . . ." *Id.* (quoting *Nelson*, 538 S.E.2d at 280). Pineda argues that such is the case here—Salinas retained ultimate control to dictate the method of work even though he seldom exercised it. But the evidence does not support his claim. Indeed, as the Commission found, it "would be mere speculation . . . to conclude that Salinas reserved the requisite power to control the means and methods by which [Pineda's] work was accomplished." Thus, we conclude that Pineda failed to meet his burden of demonstrating that he was an employee.

CONCLUSION

For the above reasons, we affirm the Commission's decision.

*Affirmed.*