12888

COVINGTON v. ATLANTIC COAST LINE R. CO.

(155 S. E., 438)

196

February, 1928, February, 1929.

*Mr. F. L. Willcox,* for appellant, cites:

*Messrs. D. Gordon Baker, L. M. Gasque* and *A. F. Woods;* for respondent,

April 9, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action, brought under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59), for damages for injuries alleged to have been received by the plaintiff through the negligent acts of the defendant, its servants and agents.

We adopt, in part, the plaintiff's concise statement of the case, which we think is sufficient for an understanding of the issues involved:

The defendant, Atlantic Coast Line Railroad Company, operates an interstate railroad from Florence, S. C., to Richmond, Va., which crosses Pee Dee river at the boundary line

between Marion and Florence Counties. The bridge across the river is approached on the Florence side through a wide swamp by a trestle, approximately two and one-quarter miles long; intersected at one place near the entry into the swamp by a short fill. Just at the entry upon the trestle on the Florence side, the railroad company maintained a telegraph tower referred to as WN Tower, and on the Marion side, a short distance from the end of the river bridge, another telegraph tower is maintained at a small station known as Pee Dee. Defendant's railroad is a double-track road, except on the trestle through the swamp and the river bridge, where it is single track. Along the trestle work through the river swamp, at intervals, platforms are maintained by the railroad company for the purpose of removing from the track velocipedes, hand cars, and motorcars at the approach of trains and to permit small cars or vehicles to pass each other. There is also what is called a gauntlet on the trestle, which means that on one side of the track there are two rails instead of one, this being for the purpose of permitting a light car to be lifted sufficiently on one side for another motorcar or velocipede in passing to run under it.

Plaintiff, an employee of the defendant, was a telegraph operator in WN Tower on the Florence side of the river, but resided in the town of Marion. In order to get to and from his work at WN Tower, he was provided by the railroad company with a three-wheel velocipede for traveling back and forth between Pee Dee and WN Tower on the railroad track over the river bridge and the trestle on the Florence side of the river. Two wheels of this vehicle fitted on one rail and one wheel on the other; it was operated by the hands and feet of the operator and was capable of a speed of about eight miles an hour. Plaintiff's hours of work were from 11 at night to 7 in the morning.

The complaint, *inter alia,* alleges:

"That at the time of the collision hereinafter related, the defendant was installing an electric signal system along its.

line of railroad tracks in the vicinity of Pee Dee, S. C., and the crew of men engaged in this work used as means of transportation railroad motorcars which were driven on the tracks of defendant.

"That on the morning of April 11, 1925, at about 7:20 o'clock, while plaintiff was returning from the said tower where he had been working, to Pee Dee, S. C., the railroad velocipede on which he was riding was run into by a railroad motorcar, traveling in the opposite direction to plaintiff, driven by J. H. Anderson, alias, 'Shorty' Anderson, one of the employees, and agent and servant of defendant, engaged in the installing of the new signal service hereinabove referred to, causing plaintiff to be thrown violently and with great force from the velocipede he was riding to the ground, a distance of several feet, as the collision occurred at a trestle over an underpass in the Pee Dee swamp, approximately three hundred and fifty feet west of the bridge over the main stream of Pee Dee river.

"That at the time of the collision the motorcar was being driven in a reckless, negligent, and careless manner, without keeping a proper lookout for other cars or velocipedes that were on the tracks, and at a high and dangerous rate of speed, and not under control, and at a time when it was known plaintiff would be on the tracks with the velocipede returning from the tower to Pee Dee, S. C."

The defendant, answering, alleged that plaintiff's injuries were caused by his own negligence and that he assumed the risk of whatever injury he suffered. A demurrer was also interposed to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, in that: (1) It appears from the allegations of the complaint that both the plaintiff and the driver of the motorcar at the time of the accident were representing and acting for themselves and for their own convenience and not for the defendant; and that (2) under the allegations of the complaint the plaintiff must be held to have assumed the risk of the injuries sustained.

The demurrer was heard by his Honor, Judge Featherstone, who on February 11, 1928, passed an order overruling same; from this order the defendant gave notice of intention to appeal. The case was tried at the February, 1929, term of the Court of Common Pleas for Florence County, before his Honor, Judge Henry, and a jury. A motion by the defendant for a directed verdict was overruled, and the jury found for the plaintiff in the sum of $10,000. The defendant appeals from the final judgment entered on the verdict.

There are several exceptions, but the questions which they present for review may be thus stated: (1) Did Judge Featherstone err in overruling the demurrer to the complaint? (2) Did Judge Henry commit error in refusing to direct a verdict for the defendant, made upon the grounds (a) that there was no proof of actionable negligence, (b) that plaintiff's injuries were due solely to his own negligence, and (c) that in any event plaintiff assumed the risk of his injuries? These questions we will consider in order.

Was there error in overruling defendant's demurrer?

The Court is satisfied with Judge Featherstone's order, which will be reported. We think, as held by him, that the complaint stated a cause of action and that the several objections urged against it by the demurrer, set out and summarized in the order of the Circuit Judge, were properly overruled. With regard to the contention that the plaintiff, at the time of his injury, was not representing or acting for the appellant, in addition to the authorities cited in the order, the case of *Bountiful Brick Company v. Giles*, 276 U. S., 154, 48 S. Ct., 221, 222, 72 L. Ed., 507, 66 A. L. R., 1402, strongly supports the conclusion arrived at by the Circuit Judge.

In that case the Court said:

"And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the

work is being done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached."

In the case at bar, the plaintiff, at the time the accident occurred, was still on the property of the defendant, though some short distance from the immediate place of his work, on his way home by a method of travel provided for him by his employer; and, as stated in the *Giles case,* the injury he suffered arose "out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance."

It is to be noted also that, while this action is brought under the Federal Employers' Liability Act, the local rules of practice and procedure are applicable. *C. & O. R. R. Co. v. De Atley,* 241 U. S., 310, 36 S. Ct., 564, 60 L. Ed., 1016. Hence, if the specifications of negligence contained in the complaint were not as specific as they might have been, defendant's remedy was by a motion to make more definite and certain. But, aside from this, the allegations that the motorcar was operated without a proper lookout, at a dangerous and excessive rate of speed, and was not under control, at a time when plaintiff was known to be returning from his work, we think are reasonably specific. *Chicago, R. I. & P. R. R. Co. v. Wright,* 239 U. S., 548, 36 S. Ct., 185, 188, 60 L. Ed., 431.

Was actionable negligence proved, or was plaintiff's injury due solely to his own negligence?

The answer to this question requires an examination

of the testimony. It is clear from the authorities cited by the appellant that there can be no inference of negligence from the mere fact of injury, and that the burden is on the plaintiff to produce some reasonable evidence tending to show some breach of duty owed to him. However, it is also true that in weighing the sufficiency of evidence to support a verdict, the rule, that the testimony and all reasonable inferences to be drawn therefrom must be taken more strongly against the moving party, applies in the Federal as well as in our State Courts. *Railway v. De Atley, supra.* With regard to the rule, the Court in that case said:

"In this action, which was brought in a State Court under the Federal Employers' Liability Act of April 22, 1908 (Chap. 149, 35 Stat. at L., 65, Comp. Stat. 1913, § 8657), the following facts appeared or might reasonably be inferred from the evidence most favorable to defendant in error (plaintiff below), in the light of which the initial question touching the validity of the judgment in his favor must be determined."

It is also clear that the Federal Act makes it the duty of the employer to exercise due care with respect to providing a reasonably safe place to work; that the employer is liable for all injury "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." *(S. A. L. Ry. v. Horton,* 233 U. C., 492, 34 S. Ct., 635, 638, 58 L. Ed., 1062, L. R. A., 1915-C, 1, Ann. Cas., 1915-B, 475) ; that contributory negligence as a complete defense is abolished; and that "the Act of Congress, by making the carrier liable for an employee's injury 'resulting in whole or in part from the negligence of any of the officers, agents, or employees of the carrier, abrogated the common-law rule known as the fellow-servant doctrine by placing the negligence of a co-employee upon the same basis as the negligence of the employer" *(C. & O. R. R. Co. v. De Atley, supra).*

In the case at bar, the plaintiff testified that, pursuant to his usual custom, he left WN Tower shortly after 7 o'clock

on the morning of April 11, 1925, on the velocipede furnished him by the defendant, for the purpose of going from WN Tower to Pee Dee; that in order to make the trip, it was necessary for him to cross the trestle over the river swamp for a distance of approximately two and one-fourth miles; that on this trestle the railroad company maintained, at intervals, platforms at the side of the trestle for the purpose of enabling motorcars and other light vehicles to pass each other; that the possible speed of the velocipede was about eight miles an hour and it could not be run backwards without danger of leaving the track; that it was the duty of one operating a velocipede, on meeting a motorcar on the trestle, to run down to the next platform in order that the vehicles might pass each other at that point, and that it was the duty of the operator of a motorcar to run slowly and cautionsly until the operator of the velocipede could get off at the platform; that while plaintiff, on the morning in question, was proceeding from WN Tower to Pee Dee over the trestle in the swamp, and when he was within about one-fourth of a mile of the Pee Dee side, and about 450 feet of the river bridge, he saw the motorcar coming; that at that time he was about half way between two of the platforms, and, as was his duty, he increased the speed of his velocipede to about eight miles an hour in order to reach the nearest platform ahead of him as soon as possible, but that the operator of the motorcar, instead of slowing down, as was his duty, to give plaintiff an opportunity to reach the platform, ran the motorcar at such a high and reckless rate of speed that he ran by two of the platforms, including the one plaintiff was trying to reach; that the motorcar ran into him before he could reach the platform and struck the velocipede upon which he was riding with such force as to knock it from the trestle and to derail a rear wheel of the motor car itself; and that as a result, he suffered painful and permanent injuries.

From this testimony, if believed, it is evident that the in-

jury complained of was not due solely to plaintiff's own negligence, but that there was actionable negligence on the part of the defendant. It is true there was testimony for the defendant tending to show that the motorcar, at the time of the accident, was running at a very low rate of speed, and that the plaintiff himself, although the motorcar was in plain view, passed a platform where it was his duty to stop, and as a result of his own negligence brought about the collision resulting in the injuries complained of. But this evidence was in sharp conflict with the testimony of the plaintiff as to what really occurred, and hence as to who was to blame for the collision, and made a question of fact for the jury. And even if the plaintiff was negligent and such negligence contributed to his injury as a proximate cause thereof, if it was not the sole cause of his injuries, it could only be considered by the jury in mitigation of damages.

The contention of the defendant that the plaintiff owed the operators of the motorcar a duty to get out of their way, and that they owed him no such duty, seems to be based upon testimony offered by the defendant to the effect that it was the custom for the lighter car to always give way to the heavy one and to clear the track for it. It is conceded that there is no specific rule of the company on that subject. But, if it were a custom, or even if there were an express rule to that effect, the operators of the motorcar could not lawfully absolve themselves from the obligation to exercise reasonable care to avoid injury to a person known to be approaching them on the trestle. In the case of *Railway Company v. Wright, supra,* the Court said:

"While doubting that the rules, rightly understood, permitted the switching crew to proceed at a speed which obviously endangered the safety of the extra, which they knew might be coming through the cut on the same track, we agree that if this was permitted by the rules, they were in that respect unreasonable and void. And in either case, we think it is manifest that there was ample evidence of negligence

whereon the company could be held responsible under the Act of Congress."

In the case at bar there was testimony tending to show that the operator of the motorcar owed the plaintiff the duty to drive slowly and with caution so as to permit him to get off at the next platform without injury; under the law, plaintiff had a right to assume that they would perform any duty in this respect. In the *De Atley case, supra,* it is said: "According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that *the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary.    *   *   *"* (Italics added). See also, to the same effect, *C., R. I. & P. Ry. v. Ward,* 252 U. S., 18, 40 S. Ct., 275, 276, 64 L. Ed., 430.

From a careful study of the testimony, the Court is satisfied that the trial Judge properly overruled the motion for a directed verdict on these grounds.

Did the plaintiff assume the risk of his injuries?

Ordinary risks "are such as are to be expected from the particular character of the service in which the employee is engaged, and have generally been defined as those which remain after the master, or one rightly exercising the authority of the master, has exercised due care to prevent or avoid them—which cannot be obviated or avoided by the exercise of due care on the part of the master." 39, C. J., 704.

An extraordinary risk is "one lying outside of the sphere of the normal arising out of conditions not usual in the master's business, and, in applying the doctrine of assumption of risk, one which may be obviated by the exercise of reasonable care on the master's part." 39 C. J., 691.

The employee assumes all the ordinary risks of his employment, but he does not assume extraordinary risks or

those growing out of the negligence of the master or his servant unless they are known and appreciated by the employee or are so obvious that a person of ordinary prudence would be presumed to know and appreciate them. *C. & O. Ry. Co. v. De Atley, supra; Reed v. Director General,* 258 U. S., 92, 42 S. Ct., 191, 192, 66 L. Ed., 480; *C. R. I. & P. R. R. Co., v. Ward, supra,*

In the case at bar, from the testimony already detailed, we think there was sufficient evidence to support a conclusion that it was plaintiff's duty in the situation in which he found himself to go on to the nearest platform for the purpose of effecting a safe meeting with the motorcar, and that it was the duty of the operators of the motorcar to run slowly and cautiously so as to afford him the opportunity to do so. There was testimony tending to show that this was the custom. If such was the custom, plaintiff could not be. charged with the duty to foresee any departure from it, but had a right to rely upon it and to assume that it would be observed. Nor was it his duty to exercise care to discover any extraordinary danger that might arise from the negligence of the appellant or of those for whose conduct the employer was responsible. *Chicago, R. I. & P. R. R. v. Ward, supra.*

In the case of *Reed v. Director General, supra,* the Court said:

"In actions under the Federal Act the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant which the injured party could not have foreseen or expected, is the sole, direct, and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad while engaging in interstate commerce shall be liable to the personal representative of any employee killed while employed therein when death results from the negligence of any of the officers, agents or employees of such carriers."

In *Railway Company v. Ward, supra,* the Court had this to say as to the defense of assumption of risk:

"Applying the principles settled by these decisions to the facts of this case, the testimony shows that Ward had neither warning nor opportunity to judge of the danger to which he was exposed by the failure of the engine foreman to cut off the cars. In the absence of notice to the contrary, and the record shows none, Ward had the right to act upon the belief that the usual method would be followed and the cars cut off at the proper time by the engine foreman so that he might safely proceed to perform his duty as a switchman by setting the brake to check the cars which should have been detached. For the lack of proper care on the part of the representative of the railway company while Ward was in the performance of his duty, he was suddenly precipitated from the front end of the car by the abrupt checking resulting from the failure to make the disconnection. This situation did not make the doctrine of assumed risk a defense to an action for damages because of the negligent manner of operation which resulted in Ward's injury, and the part of the charge complained of though inaccurate could have worked no harm to the petitioners. It was a sudden emergency, brought about by the negligent operation of that particular cut of cars, and not a condition of danger, resulting from the master's or his representatives' negligence, so obvious that an ordinarily prudent person in the situation in which Ward was placed, had opportunity to know and appreciate it, and thereby assume the risk."

In *Railway Company v. Wright, supra,* the Court held (quoting syllabus) :

"The running of a switching engine on the main track through a deep and curved cut within the yard limits at such a rate of speed as to endanger the safety of an 'extra' which the switching crew knows may be coming through the cut on the same tracks is actionable negligence under the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L., Chap. 149, Comp. Stat. 1913, § 8657), whether permitted by the railway company's rules or not, and renders the rail-

way company responsible for the killing of the engineer of the extra in the resulting collision."

See also, *Erie Railway Company v. Purucker,* 244 U. S., 322, 37 S. Ct., 629, 61 L. Ed., 1166.

As already pointed out, there was testimony tending to show that the risk was extraordinary and unusual, and that the plaintiff neither knew nor appreciated the danger and had no opportunity to choose a safe way of escape. Under these circumstances, it could not be held as a matter of law that he assumed the risk of his injury by not using proper precaution against the possible failure of the operator of the motorcar to stop for him; this being a question, under all the evidence, for the jury. And if he did not use due care in his choice of means of escape from his peril, when confronted with the sudden emergency created by the negligent operation of the motorcar as·alleged and testified to by him, at most such failure on his part constituted only contributory negligence which, as stated, was no defense to the action. The motion, therefore, for a directed verdict on this ground was properly refused.

All exceptions are overruled, and the judgment of the Circuit Court affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : I think that the case of *Chesapeake & O. R. Co. v. Nixon,* 271 U. S., 218, 46 S. Ct., 495, 70 L. Ed., 914, in connection with the cases therein cited, is conclusive against the plaintiff in this case. In that case, the Court reversed a judgment of the Supreme Court of Virginia, which affirmed a judgment of the Circuit Court in favor of the plaintiff under circumstances strikingly parallel with those of the case at bar. A review of the facts appearing in the opinion of the Virginia Court, reported in 140 Va., 351, 125 S. E , 325, discloses even a stronger case for the plaintiff than the present case.

The leading opinion is apparently based upon the theory

that if the injury to the plaintiff was caused by the negligence of a fellow servant, the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59) foreclosed all other inquiry and demands a verdict in favor of the injured servant. The decisions of the Supreme Court of the United States do not support this theory. On the contrary, they are explicit in holding that under circumstances evidencing knowledge on the part of the servant of conditions and operation fraught with peril to him, he will be held to have assumed the risk of such negligence, though it be that of a fellow servant. The case of Nixon, above referred to, is clear to the point; there the engineer and the fireman were unquestionably guilty of negligence in not keeping a lookout for the injured servant on his way to work on a velocipede, whose movements they had notice of.

The case of *Boldt v. R. Co.*, 245 U. S., 441, 38 S. Ct., 139, 140, 62 L. Ed., 385, distinctly sustains the proposition advanced. Referring to the case of *Seaboard A. L. R. Co. v. Horton*, 233 U. S., 492, 34 S. Ct., 635, 58 L. Ed., 1062, L. R. A., 1915-C, 1, Ann. Cas., 1915-B, 475, the Court said:

"The risk held to have been assumed in the *Horton case,* certainly arose from negligence of some officer, agent or employee; and if the negligence of all these should be excluded in actions under the Employers' Liability Act, it is difficult to see what practical application could ever be given in them to the established doctrine concerning assumption of risk."

In the present case the plaintiff is shown to have been an experienced railroad man, and had for months traveled in his velocipede from his station across the trestle to Marion and back; fully cognizant of the situation and of meeting other cars upon the single track; the installation of facilities for meeting and passing such cars was notice to him that he was apt to encounter them; he knew of the work that was then being done by employees engaged in the installation of a new signal system who went out upon their work about the same time that he laid off from his.

I am unable to distinguish this case from those cited and think that it should have been held that the plaintiff assumed the risk of injury from a collision with a meeting car, notwithstanding the failure of the operators of it to afford him the opportunity to reach a safety point as alleged in the complaint.