14312

CLINTON COTTON OIL CO. v. HARTFORD ACCIDENT & INDEMNITY CO.

(186 S. E., 399)

 March, 1935.

*Messrs. McKay & Manning,* for appellant,

*Messrs. Edgar A. Brown* and *R. W. Wade,* for respondent,

June 11, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The Clinton Cotton Oil Company carried a public liability policy with the defendant-appellant, Hartford Accident & Indemnity Company, on its trucks and automobiles, limited to $10,000.00 for injury to one person. The policy specifically excluded, among other things, liability for injury or death of any employee of the assured, arising out of, or in the usual course of, the assured's business; and also excluded loss by liability accepted by the assured, in contract

or otherwise. The policy included a provision that the defendant would "defend in the name and on behalf of the assured any suit alleging such bodily injuries or death or property damage to which the insurance herein provided is applicable."

On April 18, 1933, late in the afternoon, one George Boozer, a Negro laborer, who had previously been employed by the plaintiff, came to the office of its manager, J. H. Pitts, Jr., in the City of Laurens, to borrow money with which to buy a package of cigarettes. While he was at the office it statrted to rain, and the manager called to Boozer and the night watchman of the plaintiff, who was present, to hurry out and assist in unloading into a warehouse the contents of a truck of the plaintiff which had just driven up, loaded with chicken feed or some other type of feed, so as to get the feed out of the rain as quickly as possible.

While Boozer was actively engaged in assisting, or attempting to assist, in the unloading, the truck was suddenly backed, and he was crushed against the brick warehouse, suffering injuries which resulted in his death. The appellant was duly notified, and after an investigation declined to accept or acknowledge liability, on the ground that at the time the accident occurred Boozer was an employee of the plaintiff, and hence did not come within the liability coverage.

Suit was then brought by the legal representative of the estate of the deceased against Clinton Cotton Oil Company, in the Common Pleas Court for Laurens County for damages, in the amount of $10,000.00. The complaint in that action alleged, among other things, that Boozer "was directed and instructed by the Clinton Cotton Oil Company, its agents, servants and employees, to assist * * * in unloading a truck." Clinton Cotton Oil Company filed an answer in the suit, which contains, in substance, a general denial, and the plea of contributory negligence. In due course a verdict, by consent, in the amount of $1,200.00

was taken against the oil company in open Court, and judgment entered thereon.

Thereafter, in the Court of Common Pleas for Barnwell County, Clinton Cotton Oil Company instituted this action against the Hartford Accident & Indemnity Company, seeking recovery against the defendant for $1,468.15, covering settlement of the judgment hitherto referred to, and the costs and attorney's fees incurred.

The defendant set up what is in effect a general denial, and pleaded certain provisions of the policy in question to the effect that its liability did not include an injury to one who was injured while in the assured's employment, and further alleged that it could not be held liable for an amount paid voluntarily by the insured in settlement of a case.

At the close of the testimony for the plaintiff, a motion was made by the defendant for a directed verdict upon grounds hereinafter considered. This motion was overruled, and upon the cause being submitted to the jury a verdict in full for the plaintiff was rendered.

The defendant offered no testimony.

The exceptions upon appeal assign error to the trial Judge in overruling the motion for a directed verdict. The appellant contends that the case presents no issue of fact between the parties, and that the only questions involved are questions of law: First, as to whether or not George Boozer was an employee of the Clinton Cotton Oil Company at the time of his injuries; and, second, whether under the terms of the policy the acceptance by the assured of liability, evidenced by the consent verdict, barred its right to recover.

At the trial of the case below it was the contention of the plaintiff that the sole question for the jury to decide was whether or not the Negro, Boozer, was in the employment of the Clinton Cotton Oil Company at the time of his fatal injury.

The verdict, if sustained at all, must be sustained, on the ground upon which the case was submitted to the jury. The

trial Judge charged: "If George Boozer was an employee your verdict will be for the defendant, and if you find that he was not an employee your verdict will be for the plaintiff for the amount sued for."

The manager of the plaintiff testified that when the truck, loaded with the feedstuff, drove up to the warehouse he requested Boozer to help unload it, and "it came up a rain, and they stopped unloading, and he ran out of the door and came back"; that he, as manager of the plaintiff, wanted to get the feedstuff out of the rain as soon as possible. The manager further testified: "The truck came up with the feed, and a night watchman and I were there, and the truck drove in and in a hurry, and I said let's get that feed off right quick, and you might say I was speaking for the night watchman and myself and the Negro and all, and I came out of the door just in front of the Negro, and I lacked about that much getting killed instead of the Negro."

This testimony shows beyond question that Boozer was called by plaintiff's manager to assist in the unloading of a truckload of feed in the emergency created by a rainstorm. He was engaged in an effort to preserve plaintiff's property, and was acting pursuant to the request of the plaintiff's manager when he sustained his fatal injury.

That the circumstances thus shown constituted him the servant or employee of the plaintiff at the time of the accident has been sustained by previous decisions of this Court.

In *Jackson v. Southern Ry. (Carolina Division)*, 73 S. C., 557, 54 S. E., 231, it was held that where a station agent of a railroad company calls in a bystander to assist in pushing cars in order to save them from a fire, he discharges the duties of a superior agent or officer of the company, and must provide a safe place for the servant, so employed, to work, and if he be injured because cars were negligently uncoupled, the company is liable. It would be hard to find a case more apposite to the case at bar. In each case the emergency existed, and in each instance the bystander responded

to the request of an agent to help save the property of the employer in an emergency.

In *Tucker v. Buffalo Cotton Mills*, 76 S. C., 539, 57 S. E., 626, 121 Am. St. Rep., 957, the Court reaffirmed the principle announced in *Jackson v. Southern Ry., supra*, and held that where a stranger in a cotton mill, by permission, is requested by a section boss to procure some oil from an oil pan, it makes the stranger an employee as to that particular work so as to render the master liable if he fails to furnish a safe place in which to work.

In *Jackson v. Southern Ry., supra*, it is recognized that the circumstances of the employment of the injured party constituted him a fellow servant of the section laborer with whom he was engaged.

In *Tucker v. Buffalo Cotton Mills, supra*, it was held that while engaged in the work requested by the section boss, the stranger became an employee, and the employer was bound to furnish him with a reasonably safe place in which to work.

It is immaterial in this case whether the deceased received his injuries by reason of the negligence of the driver of the truck, who was his fellow servant, or by reason of the failure of the Clinton Cotton Oil Company to furnish a reasonably safe place in which to perform his duties, or reasonably safe instrumentalities with which to do his work. His status, under the authorities cited, was that of an employee of the plaintiff, as distinguished from his status as a member of the public, and it follows that his injury was not within the provisions of the policy issued by the defendant. The policy in question does not require the insurer to defend all actions. The agreement is "to defend in the name and on behalf of the assured any suit alleging such bodily injuries or death or property damage to which the insurance herein provided for is applicable."

When the plaintiff, through its authorized agent, summoned Boozer from the ranks of the public and put him to

work unloading its truck, whether by request or by specific direction, his status as a member of the general public immediately changed, and the defendant *ipso facto* was no longer to be held liable on its policy to the plaintiff for the resulting injury suffered by him while in such employment.

Under the facts and circumstances of this case, the deceased was an employee of the plaintiff at the time he received his fatal injuries, hence under the policy contract this constituted "a loss by injury or death of (an) employee of the assured arising out of or in the usual course of assured's business." Therefore, no duty devolved upon the defendant to defend the action brought against the plaintiff by the legal representative of the estate of the deceased.

The respondent contends that the very terms of the policy which we have quoted would not include in the excepted class those who were giving assistance gratuitously.

Under the authorities cited above, the status of Boozer became fixed as an employee, without reference to the question of gratuity. It is also clear that at the time of his injury he was engaged in the usual course of the assured's business, in helping to unload a truckload of feedstuff.

From a review of the entire record, we are of the opinion that the testimony created no issue of fact between the parties. Under the evidence, there is only one reasonable inference to be drawn, and that is that the Negro, Boozer, at the time of the accident, was an employee of the plaintiff, and this employment comes within the exception of the policy hereinbefore referred to. A verdict should have been directed for the defendant. Having reached this conclusion, it becomes unnecessary to consider the second question presented by the exceptions.

The judgment of the Circuit Court is reversed and the case remanded, for entry of judgment in favor of the defendant under Rule 27.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Baker concur.

Mr. Justice Carter dissents.

Mr. Justice Carter (dissenting) : It is clear that the real question involved in this appeal is, Was the deceased, George Boozer, an employee of the plaintiff, Clinton Cotton Oil Company, at the time of the accident in question, resulting in his death? In this connection I quote the testimony adduced at the trial, bearing on that question, as follows:

"DIRECT EXAMINATION

"Witness: J. H. Pitts, Jr.

"Q. Where do you live? A. Clinton.

"Q. What is your business? A. I am the local manager of the Clinton Cotton Oil Company.

"Q. I believe the Kershaw Oil Mills owns the Clinton Cotton Oil Company? A. Yes, sir.

"Q. How long have you been manager of the Clinton Cotton Oil Company? A. Since 1926.

"Q. Did you ever know a Negro by the name of George Boozer? A. Yes, sir.

"Q. Where is George? A. He is dead.

"Q. When did he die? A. In 1933.

"Q. What caused his death? A. He was injured by a truck and died a few days afterwards.

"Q. Whose truck? A. Clinton Cotton Oil Company.

"Q. How many days was it before he died after he was injured? A. About four or five days.

"Q. Do you know Mamie G. Boozer? A. Yes, sir.

"Q. Who is she? A. His wife.

"Q. Did she administer on his estate? A. Yes, sir.

"Q. Did she sue the Clinton Cotton Oil Company? A. Yes, sir.

"Q. When this accident took place did you notify the Hartford Accident and Indemnity Company, who carried your insurance? A. Yes, sir.

"Q. Did you ask that Company to come in and defend the case? A. Yes, sir.

"Q. Did they assume that liability or not? A. They did not.

"Q. They denied liability? A. Yes, sir.

"Q. Was the suit brought on for trial in the Court House at Laurens? A. Yes, sir.

"Q. Who represented the Clinton Cotton Oil Company? A. Mr. Wade and yourself.

"Q. What was the amount of the suit? A. They sued for ten thousand dollars, I think.

"Q. Was it a case of liability as far as you were concerned? (Here occurred discussion between counsel and the Court.)

"Q. Was George Boozer an employee of the Clinton Cotton Oil Company? (Here occurred discussion between counsel and the Court.)

"Q. I ask you the simple question, Mr. Pitts—was George Boozer an employee of the Clinton Cotton Oil Company?

"Mr. McKay: I think he can state the facts, but that is a legal conclusion.

"A. No, sir, he was not.

"Q. He was not working for you? A. No, sir.

"Q. Have we ever admitted in Court or anywhere that George Boozer was employed by the Clinton Cotton Oil Company at the time of this accident? A. No, sir. (Here occurred discussion between counsel and the Court.)

"Q. Tell whether or not the Insurance Company had all the facts surrounding this accident and did send their representative there to investigate the case? A. They had all opportunity to know about it and they sent a man there, but they didn't defend the case.

"Q. And it was necessary for the Company to defend the case and pay the judgment? A. Yes, sir."

"CROSS EXAMINATION

"By Mr. McKay:

"Q. You are manager of the Clinton Cotton Oil Company? A. Yes, sir.

"Q. On the night the negro was killed he had come to your office? A. Yes, sir.

"Q. To borrow some money to get some cigarettes? A. Yes, sir.

"Q. It was raining? A. It had been and was starting to rain again.

"Q. When had you last paid him his wages? A. I think he had probably drawn some wages the week before.

"Q. At that particular time the mill was not operating, was it? A. The fertilizer plant was. That is what we were working. .

"Q. His particular line of work was not going on? A. We had been working on, but he was working on the R. F. C.

"Q. What work did he do? A. The days he did work he rolled the wheelbarrow in the fertilizer plant, but he had not worked there except but a few days that spring.

"Q. He had worked off and on for you a long time? A. He worked nearly every fall at the gin house.

"Q. The type of work he was employed to do was not in the fertilizer plant? A. He could have, but he preferred to work for the R. F. C.

"Q. When he was there didn't one of your trucks come up filled with chicken feed? A. Some kind of feed.

"Q. It looked like it was going to rain? A. Yes, sir.

"Q. You directed him to get out and help unload that truck? A. I didn't direct him to, but I asked him to help unload it, and it came up a rain and they stopped unloading, and he ran out of the door and came back.

"Q. You as manager wanted to get that stuff in out of

the rain as soon as possible? A. Yes, sir, I didn't want it to get wet.

"Q. You are still the manager up there? A. Yes, sir."

"REDIRECT EXAMINATION

"By Mr. Brown:

"Q. This truck brought a load of some kind of feed stuff up and backed it up against the warehouse? A. Yes, sir.

"Q. And a rain was coming up? A. Yes, sir.

"Q. And you and the night watchman and all ran out to help get the feed in the warehouse? A. Yes, sir.

"Q. And the negro volunteered to help? A. Yes, sir.

"Mr. McKay: I object to that.

"Mr. Brown (continuing): Well, how did the negro get out there? A. The truck came up with the feed, and a night watchman and I were there, and the truck drove in and in a hurry, and I said let's get that feed off right quick, and you might say I was speaking for the night watchman and myself and the negro and all, and I came out of the door just in front of the negro, and I lacked about that much getting killed instead of the negro.

"Q. The back end of the truck was up here (indicating)? A. Yes, sir.

"Q. And this was a brick warehouse? A. Yes, sir.

"Q. You say it came near getting you? A. Yes, sir.

"Q. It crushed the negro to death? A. Yes, sir, he died a few days afterwards; he was injured."

In effect, it is the contention of appellant that the only reasonable inference to be drawn from the testimony is that George Boozer was at the time of said accident an employee of the plaintiff, the said Clinton Cotton Oil Company, and for that reason the trial Judge should have granted defendant's motion for a directed verdict; whereas, the plaintiff contends that George Boozer at the time of receiving said fatal injuries was not employed by nor working for the plaintiff, but was attempting to perform a gratuitous act, and that the trial Judge properly permitted the jury to de-

cide that issue; the testimony being susceptible of more than one reasonable inference on this issue. This position is in accord with the ruling of the trial Judge, his Honor, Judge C. J. Ramage, and I agree with the same. In my opinion, the trial Judge properly submitted the issues to the jury, and committed no error in overruling defendant's motion for a directed verdict.

I wish to state further that I find no reversible error in the case. Therefore, I think the judgment of the lower Court should be sustained.