RICKENBAKER v. LAYTON et al.
Civil Action No. 1068.

District Court, E. D. South Carolina, Aiken Division.

March 8, 1945.

Williams & Busbee and John F. Williams, all of Aiken, S. C., for plaintiff Rickenbaker.

Chas. B. Elliott, of Columbia, S. C., and John E. Stansfield, of Aiken, S. C., for defendant Layton.

Herbert & Dial, of Columbia, S. C., for defendant Maryland Casualty Co.

TIMMERMAN, District Judge.

This case has been tried before; the first time, approximately a year ago. D.C., 58 F.Supp. 452. It is a law case. The judgment entered on the first trial was reversed pro tanto. 4 Cir., 146 F.2d 751, 752. The history of the case is fully stated in the above citations. It will avail little, if anything, to repeat at length what was said in prior opinions. However, some reference will be made thereto in what follows.

Upon the first trial, both in consequence of the pleadings and of a stipulation duly agreed to, the only contested issue was as to which of two policies of automobile insurance was of force on the 15th day of January, 1940, the date of alleged injuries sustained by plaintiff in an automobile accident. The first policy unquestionably was issued on the 20th day of May, 1939, to run for a period of one year, and it covered the automobile concerned in said accident. The other policy allegedly was issued as of date December 31, 1939, to run for a like period, and in cancellation of the first policy. The stipulation of the defendant Casualty Company admitted liability for the injuries sustained by plaintiff, if the first policy was in force on the date of the accident; and, in effect, so did the answer of said defendant.

It was held on the first trial that the policy of May 20, 1939, was of force on the date of said accident; and accordingly judgments were entered against the defendant Casualty Company for agreed amounts. There was no issue as to the amounts due to the plaintiff and the defendant Layton, respectively, if liability existed under either policy.

The Circuit Court of Appeals affirmed so much of this Court's opinion as held that the first policy was in force and effect on the date of the accident in question, saying:

"The attention of the parties was thus centered on the issue of cancellation as they proceeded to trial. The evidence on the point was conflicting but the District Judge reached the conclusion that the old policy was in force when the accident occurred. There was substantial and persuasive testimony to support this conclusion and we need not review it, for a finding of fact by a District Judge in an action tried without a jury should not be set aside under Rule 52(a) of the Rules of Civil Procedure * * * unless it is clearly erroneous, and in any view of the testimony it cannot be said that there was clear error in this instance."

The occasion for the reversal of one of the original holdings of this Court was a motion by the defendant Casualty Company, made at the close of the first trial, (a) to amend its answer by conforming it to certain proof developed on said trial, and (b) to continue the trial to a subsequent date to allow the Casualty Company time within which to assemble proof, if it could, to show that its first policy of insurance contained an exclusionary provision relieving it of liability for the accident in question.

At the time said motion was made there was no testimony before the Court to indicate that the policy of May 20, 1939, was anything more than a general coverage policy or that it contained an exclusionary provision which conceivably might relieve the Casualty Company of liability under the facts to which it desired to conform its answer. For that reason and on account of the palpable laches of the Casualty Company (not its attorneys in the instant case), the motion was refused, and judgment was then entered as aforestated. It was this holding that was reversed, the Appellate Court saying, in part:

"These observations of the judge are not without foundation; and as a motion to amend the pleadings and introduce additional evidence during the course of a trial is a matter addressed to the sound discretion of the judge, his ruling here would be conclusive were it not for the fact that *it may result* in manifest injustice and impose a liability upon the

158

Casualty Company which it did not assume in its contract." (Emphasis added)

The ultimate conclusion of the Appellate Court is stated in these words:

"The judgment of the District Court will be reversed, and the case remanded for a new trial at which the court will be free to find whether or not Rickenbaker was an employee of the insured and whether or not there was any liability under the policy of May 20, 1939."

Thus it will be seen that this case has been remanded to this Court to settle two issues, neither of which was made in the original pleadings, to-wit: (a) "whether or not the" plaintiff, at the time of the accident in question, "was an employee of the insured," the defendant Layton; and (b) "whether or not there was any liability under the policy of May 20, 1939," the referred to first policy.

Upon the second or present trial hereof the following facts, as found on the first trial, are accepted as established, to-wit:

(a) That the plaintiff recovered judgment in the State Court against the defendant Layton for his injuries sustained in said accident, as alleged in the complaint herein;

(b) That the defendant Layton is entitled to judgment against the defendant Casualty Company for attorneys fees incurred in the said State Court action in the agreed sum of $400, provided it is determined that the Casualty Company is liable on the main issue, that is, if the Casualty Company is liable under its policy of May 20, 1939, for the injuries sustained by the plaintiff in said accident; and

(c) That the Casualty Company's policy dated May 20, 1939, was of force on the 15th day of January, 1940, the date on which the plaintiff was injured while riding in the insured automobile of the defendant Layton, which said injuries were the basis of the aforesaid judgment obtained in the State Court.

The defendant Casualty Company has now offered secondary evidence of the policy of May 20, 1939. The provision in said policy upon which the Casualty Company relies to sustain its present denial of liability reads as follows:

"This policy does not apply * * * (e) under Coverage A, to bodily injury to or death of any employee of the insured while engaged in the business of the insured, other than domestic employment, or in the operation, maintenance or repair of the automobile; or to any obligation for which the insured may be held liable under any workmen's compensation law." (Taken from p. 13 of the transcript of testimony)

The meaning of the quoted paragraph of the policy is perfectly clear; and under it, if the plaintiff Rickenbaker, at the time of his injuries, was an employee of the defendant Layton, the insured, and as such was engaged in the business of said insured, he cannot recover in this action against the Casualty Company; and for a like reason the defendant Layton cannot recover his necessary attorney's fee in the State Court action against said company. Hence, it follows that the only remaining issue before the Court is whether or not the plaintiff Rickenbaker was an employee of the defendant Layton, the insured, and as such was engaged about the business of said insured at the time of his injuries on January 15, 1940. This presents a clear cut and difficult issue of fact.

Upon the first trial the defendant Smith testified that on the occasion of the plaintiff's injuries he was in charge of the insured's automobile, using it in his capacity as a traveling salesman for the insured, and that the plaintiff was riding with him in said automobile when injured. He further testified that he had employed the plaintiff to show him the way to the places of business of certain customers so that he, Smith, could solicit such customers to purchase or give orders for products being offered for sale by his principal, the insured.

Immediately following the testimony of Smith on the first trial, the Casualty Company called the defendant Layton, the insured, as a witness and he testified that Smith was authorized to employ others to assist in his work. In the view of the case taken by this Court at that time such testimony was irrelevant and it was accorded no weight one way or the other, although it did appear quite remarkable for a wholesaler of goods to authorize his traveling salesmen to employ others to help them, in the absence of exceptional circumstances, with their work. Smith's job in its nature was a one man's job.

Rickenbaker did not testify at the first trial, presumptively because of the admissions in the answer and the stipulation of

the defendant Casualty Company. Upon the second trial he did testify, stating in effect that he was a rural mail carrier in the Kathwood section of Aiken County, South Carolina, and had been for approximately twenty-five years. He further testified that the defendant Frank Smith, traveling salesman of the insured, had been an acquaintance and friend of his for fifteen years; that some of Smith's customers had moved on his (Rickenbaker's) rural mail route and that he had been requested by Smith to ride over the route with him on the afternoon of the accident to point out where said patrons were then living, and that he had agreed to do so; that Smith made an appointment to call for him at his home on the afternoon of January 15, 1940, for the purpose aforesaid; that Smith did call for him and he rode the route with Smith, finishing up "around five o'clock"; that after he had gone over the mail route with Smith, he was then invited by Smith to ride on to Ellenton with him where he (Smith) had other customers to see, as it would save some traveling if they went to Ellenton before returning to his (Rickenbaker's) home, and that he accepted this invitation; and that they were on their way back from Ellenton when the accident occurred "about seven o'clock". Furthermore Rickenbaker testified most positively that he was not employed by Smith; that nothing was said about employment; and that he had not been paid anything by either Smith or Layton, or offered any pay, and that he never expected any pay, for riding with Smith either over the rural mail route or to Ellenton.

On cross-examination Rickenbaker testified that he heard Smith testify at the first trial and that he had not taken the witness stand to contradict Smith's testimony. He further identified his signature to a statement presented to him by a representative of the Casualty Company in the City of Columbia, while undergoing treatment for his injuries in a hospital. This statement reads as follows:

"Columbia, S. C. Feb. 3, 1940.

"Statement of Clarence Rittenbaker, white male, American, married, Age 44, of Kathwood, S. C. Employed by Federal Gov't as a Rural Mail Carrier.

"On Mon. Jan 15 about 4:00 P. M. a Mr. Frank Smith came by my home near Kathwood and asked me to ride over to Ellenton with him. As I did not have anything to do I went with him. About an hour & 1-2 later or about dark we were on our way back home going North on highway #28 when he lost control of the car & we went over an embankment.—

"We were riding along at a point at which there had been an accident a few days before & he was telling me about it, and as he got too far over on the right side of the road & in an effort to get back he cut the car to the left. When he did this he lost control of the car & we went over an embankment on the left hand side of the road. The embankment is about 10 or 12 feet high and in going over it the car turned over two or three times.—

"It was clear at the time & the road was dry and we were not meeting any cars at the time.—

"When the car turned over it caught on my left leg and broke it about the knee. I lost consciousness at the time & I do not know what Part of the car caught or broke my leg.—Any way they had to get help to get the car off me & as soon as they did there was an ambulance there which took me to the Aiken County Hosp. where I sayed until Fri.—I was under the care of Dr. Brooks.—On Friday I transferred to the Veterans Hosp. in Columbia where I have been since.—

"The car was completely torn up by the accident.

"I do not know how fast he was driving, but he was not going very fast.—Mr. Smith had not been drinking at the time nor had I.

"I have been knowing Mr. Smith for a number of years and this is the first accident that he has ever had so far, as I know. In my opinion the accident was unavoidable.—

"I was in an auto wreck in 1937 & got some ribs broken and was bunged up pretty bad.—

"I am under the care of Dr. Burger here at the Hosp.—

"The above is true and correct.

"(Signed) Clarence P. Rickenbaker."

Rickenbaker also testified upon his redirect examination that he did not understand Smith to testify at the first trial that he had paid him anything for his services, but understood Smith to say he was willing to pay him. There is nothing in Rickenbaker's affidavit, offered in evidence by the Casualty Company, to contradict his

oral testimony that he was not employed by either Layton or Smith on the occasion in question. In fact the affidavit indicates that he was riding with Smith simply as a guest.

The defendant Layton was again called as a witness on the second trial, this time in his own behalf, and he testified that he had never been asked, either by Smith or Rickenbaker, to pay for services rendered by Rickenbaker on January 15, 1940, and that he didn't know that Rickenbaker had been in the automobile with Smith until the day after the accident. Further that he never gave Smith any specific authority to employ Rickenbaker.

On cross-examination the defendant Layton was asked about his testimony upon the first trial to the effect that Smith was authorized to employ others to help him. He explained his former testimony by saying that he had misunderstood what he was being asked about; that "What I meant if he got in trouble or in the mud to send the bill for it". "We were talking about whether my men had authority to employ anybody to help them out of a tight."

The foregoing is thought to be a fair summary of the testimony upon the issue of whether or not Rickenbaker at the time of the accident was an employee of the insured Layton. There is nothing else of importance bearing on this issue, except the stipulation of the Casualty Company and the excerpts from the briefs of counsel for appellees, filed in the Circuit Court of Appeals, which excerpts were offered in evidence by the Casualty Company without objection.

The excerpt from the brief of John F. Williams, Esquire, attorney for the plaintiff-appellee, appearing on pages 2 and 3 thereof reads as follows:

"The appellee further states, after the evidence on this issue was concluded, the plaintiff called the defendant Smith as a witness, who testified to exactly what was alleged in the complaint in the trial court, resulting in the judgment against Layton in behalf of the plaintiff Rickenbaker at Aiken, to-wit (Paragraph V of complaint in case of Rickenbaker v. Layton and Smith in State Court):

" 'V. That on said date, the plaintiff being then, and, having for a long time prior thereto, been a rural mail carrier, was engaged by the defendant, Frank Smith, acting within the scope of his authority, to go along with him and point out to him the locations of several of his customers; pursuant to said agreement with the defendant, Smith, the plaintiff and the said Smith went around the route that plaintiff was serving and said Smith was pointed out by the plaintiff the location of each of the customers that the defendant, Smith, was looking for. Having completed his work, the defendant, Smith, was returning the plaintiff to his home at or near Jackson, which necessitated their traveling along the highway mentioned hereinafter, in the automobile aforesaid.'

"Plaintiff proved further by said Smith that on the 2nd day after plaintiff sustained his injuries a representative of the defendant came to him and obtained a statement from him giving the details of the wreck, or upset, and why Rickenbaker was in the car. Thereupon appellant called Mr. Layton to the stand and asked him if he would have paid Rickenbaker for showing Smith these customers, and he said that he would have allowed it on the expense account of Smith, if Smith had sent him one for it; but nowhere in the pleading nor in the testimony did Smith or anyone say that any compensation had been mentioned between Smith and Rickenbaker. It was then that the appellant moved to amend its answer upon the alleged ground that Rickenbaker was an employee, and that employees were excluded from coverage. This motion was denied for controversial reasons that will be referred to in the argument, and which are set out in the District Judge's decree (appellant's appendix page 8)."

The other excerpt offered in evidence, from the brief of Messrs. Stansfield and Elliott, attorneys for the defendant Layton, appears on page 9 of said brief, and it reads as follows:

"His Honor, the District Judge, also clearly reviewed the reasons for denying such motion. (Appellant's App. p. 13, et seq.). To the Appellant's contention before the District Judge that it did not know of the claimed relation of employee and employer purporting to exist between Rickenbaker and Layton when it assented to the stipulation, the Court held that admittedly it interviewed Rickenbaker shortly after the accident occurred and also the insured, Layton, and his agent, Frank Smith; that there was no evidence that it was not claimed that Layton or Ricken-

baker misrepresented any facts to the Casualty Company; that the Casualty Company was notified of the accident immediately and again when the suit was brought in the State Court; that the Casualty Company had been furnished a copy of the complaint and had been requested to defend the suit in Layton's behalf; that the complaint in the suit against Layton in the State Court alleged the following: 'the plaintiff was engaged by the defendant, Frank Smith, acting within the scope of his authority to go along with him and point out to him locations of several of his customers, pursuant to said arrangement with the defendant, Smith, the plaintiff and said Smith went around the route that plaintiff was serving and said Smith was pointed out by the plaintiff the locations of each of the customers that the defendant, Smith, was looking for.' The District Judge concluded: 'This allegation was enough to put the defendant Casualty Company on inquiry as to the plaintiff's connection with Layton'; and, as the District Judge held, the requested amendment could not have availed Appellant since there was no evidence that the policy of May 20, 1939 contained any such exclusionary provisions" etc.

In passing it should be noted that the arguments presented to the Appellate Court were disposed of by that Court and it is not now the prerogative of this Court to consider them in any light other than that in which the Appellate Court appraised them. Besides, the most important statement appearing in the cited briefs, with which the Appellate Court seems not to have dealt, and with which this Court did not deal in the first trial, is the allegation in the complaint of the plaintiff in the State Court case to the effect that whatever work may have been done by the plaintiff for Smith or his principal, the insured, had been completed before the accident.

Counsel for the Casualty Company contend that the failure of the plaintiff or the defendant Layton to offer testimony on the first trial in rebuttal of Smith's testimony that he had employed the plaintiff should be regarded as approval of Smith's testimony, but the force of this position is much weakened when considered in the light of the Court's ruling at that time and the prior admissions of the Casualty Company, both in its answer and in its stipulation.

Additionally, counsel for the Casualty Company argue that the plaintiff and Layton have changed positions between the first and the second trial and that such change should mitigate against the position now taken by them. That argument also should be considered in the light of the history of this case. The issues now being considered were not even raised in the original answer of the Casualty Company and hence were not considered on the first trial; they were framed in the Appellate Court upon the reversal of this Court for the reason, as stated by the Appellate Court, that the holding of this Court, even though it was "not without foundation" and concerned a "matter addressed to the sound discretion of the judge," "*may result* in manifest injustice * * *." Hence, the Court is now concerned more about avoiding manifest injustice to some litigant than it is with mere rules of law or the vacillation of counsel.

A contract of employment, like any other contract, can only arise out of a meeting of the minds of the contracting parties; and such a contract usually involves the agreement of one party to render services or labor for the benefit of another who in turn becomes obligated, expressly or by implication, to pay a consideration therefor. The testimony in this case hardly warrants the inference that such a relationship has been established between the insured and the plaintiff as of the time of the accident. The fact that no compensation was agreed upon, or ever asked by, or paid or offered to the plaintiff, for whatever he may have done on the afternoon in question, although five years have now elapsed, lends some support to plaintiff's contention that he was not at any time an employee of the insured. However, the question before the Court is narrower than that. It is: Was the plaintiff, at the time of his injuries, an employee of the insured and as such engaged in the business of the insured?

Counsel for the Casualty Company offer the following from Salley v. McCoy, 186 S.C. 1, 195 S.E. 132 at page 135, to-wit:

"The elementary principle that counsel will not be permitted to take inconsistent positions at successive stages of a cause, and thereby prolong the litigation, is clearly applicable here; and that principle attains especial importance and significance when it is applied to prevent a change of positions on the part of the litigants that

goes to the very foundation of a decision previously made upon an inconsistent view of the law. And the principle attains even greater importance where the issue sought to be raised for the first time on the second trial of the matter is an attack upon the constitutionality of an act which previously was recognized by the court, at the instance of the litigants themselves, as constitutional in all particulars."

Aside from the dissimilarity between the two cases—the one cited and the one being tried—in point of fact, it may not be amiss to say what is obvious, that the doctrine of the Salley case, now invoked by the Casualty Company, might have been more appropriately urged on the appeal herein than now. Anyway it is clearly apparent that the Appellate Court did not intend to remand this case to this Court to determine a one-sided issue, that is to say, an issue upon which all but one of the litigants would be precluded before the hearing commenced.

The case of Covington v. Atlantic Coast Line R. Co., 158 S.C. 194, 155 S.E. 438, also relied on by the Casualty Company, is of doubtful value in this case. The Covington case was one for damages to an employee under the Federal Employers' Liability Act and was predicated on negligence. The issues before the Court arose, not on the trial of the case, but upon a demurrer questioning the sufficiency of the allegations of the complaint. The contention of the railroad was that the allegations of the complaint showed the plaintiff to be acting for himself rather than for the railroad at the time of his injuires. Both the Circuit Judge and the Supreme Court disagreed with that interpretation.

The case of Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402, also cited in behalf of the Casualty Company, is hardly in point. It was a Workmen's Compensation case in which the right to compensation depended on whether the employee's injuries arose "out of and in the course of his employment." The case of Gallman v. Springs Mills, 201 S.C. 257, 22 S.E.2d 715, is of like pattern.

A case more directly in point than any yet referred to is the case of Clinton Cotton Oil Company v. Hartford Accident & Indemnity Co., 180 S.C. 459, 186 S.E. 399. Mr. Justice Fishburne, the writer of the opinion, reviewed Jackson v. Southern Ry., 73 S.C. 557, 54 S.E. 231 and Tucker v. Buffalo Cotton Mills, 76 S.C. 539, 57 S.E. 626, 121 Am.St.Rep. 957. The Jackson case is perhaps the leading case on the subject in South Carolina. There the station agent of the railway company called upon a bystander, in an emergency, to assist in pushing cars away from a threatening fire. It was held in that case that the relationship of master and servant was created when the bystander undertook the work he was directed to do.

In the Cotton Oil Company case, a former employee of the Company, while visiting on its premises, responded to the directions of the Company's manager, given in an emergency, to assist in unloading feed from a truck, to save the feed from a threatened rain, and he was held to be an employee of the Company in the sense of a policy of insurance which excluded from coverage any employee whose injury or death arose "out of, or in the usual course of, the assured's business."

The instant case differs materially in point of fact from the Oil Company case. In the instant case there was no emergency, and full opportunity existed for the parties to agree upon terms of employment, if employment was intended. Then too, in the cases cited, the injuries sustained occurred while services of importance to employers actually were being performed. In the instant case such services as were performed by the plaintiff had been completed two hours before his injuries; and in the meantime he had left the scene of such services and gone off on an entirely different mission respecting which he owed the insured no duty and performed none for him.

The Court, in the Cotton Oil Company case, evidently regarded as important the fact that an emergency existed warranting the action taken by the Company's manager and the further fact that the injured party was actually engaged in the business of the insured at the time of his alleged injuries. As pointed out those conditions are absent in the instant case.

Under the policy provisions relied on by the Casualty Company, "bodily injury to * * * any employee of the insured *while engaged in the business of the insured*" is excluded from coverage. Conversely there is no exclusion from coverage of an employee, or of any other person, who is not so engaged. All the testimony shows· that the plaintiff was en-

gaged in no business for the insured, gratuitously or otherwise, at the time of his injuries. If he had ever been so engaged, he ceased to be two hours before his injuries; and at the time of his injuries he was doing nothing to promote or further "the business of the insured". See Marks' Dependents v. Gray et al., 251 N.Y. 90, 167 N.E. 181 and Holder v. Haynes, 193 S.C. 176, 7 S.E.2d 833.

 It is too well settled in South Carolina, to need the citation of authorities in support thereof, that in the construction of insurance contracts that meaning should be attributed to the language used which ordinarily is given to such language, unless it is susceptible of more than one reasonable construction, in which case it will be given that construction which is most favorable to the insured. Here the language of the policy excludes an employee of the insured from coverage only when such employee is actually engaged in the business of the insured. To say that a casual employee of the insured, who was not at the time of his injuries engaged in any business of the insured and had not been for two hours, is excluded from coverage would be to give the language of the policy a strained construction or else to resolve a possible ambiguity in favor of the insurer and against the insured.

In addition to what has been said already, the following findings of fact seem to be warranted, to-wit:

1. That the policy of May 20, 1939, was in force on January 15, 1940, the date of plaintiff's accidental injuries for which he recovered judgment in the State Court against Layton, the insured, and Smith, the insured's traveling salesman;

2. That said policy contains the exclusionary provision hereinbefore quoted;

3. That at the time of his injuries the plaintiff was, and had been for a long time, a rural mail carrier in the Kathwood section of Aiken County, South Carolina;

4. That the plaintiff and the defendant Smith, the salesman of the insured, had been friends and acquaintances for about fifteen years;

5. That in pursuance of a prior engagement, Smith called at plaintiff's home the afternoon of, and prior to the accident, in the insured's automobile, for the plaintiff to ride over the plaintiff's rural mail route with him to point out where certain of Smith's former customers were then living, and that plaintiff rode with Smith and pointed out said places of residence as requested;

6. That Smith and plaintiff completed the tour of the mail route about five o'clock in the afternoon of said date, and Smith then invited the plaintiff to ride with him to Ellenton, a place entirely off and away from said mail route, where Smith had other business to attend to for his principal. The plaintiff accepted this invitation, but it does not appear that he had any connection whatsoever, or that he was in any way concerned with the business to be transacted by Smith in Ellenton, or that he performed any service for either Smith or Layton on the trip to Ellenton;

7. That on the return trip from Ellenton, about seven o'clock the same afternoon, the insured automobile, in which they were riding, overturned with resultant injuries to the plaintiff—the same injuries for which the plaintiff recovered the aforementioned judgment in the State Court;

8. That there was no agreement between Smith, either as an individual or as agent of the insured, and the plaintiff that the plaintiff would be compensated for any services rendered or for any information furnished on the afternoon in question;

9. That the plaintiff has never been paid, or offered any pay, for whatever he may have done on the occasion in question, nor has he ever asked for any pay therefor, notwithstanding more than five years have now elapsed since the event; and

10. Since the plaintiff had permanent employment with the government at the time of his injuries, and there is no evidence that he intended to abandon such permanent employment, he could have been employed by the insured, if at all, only for a casual or temporary purpose, which when accomplished would have ended the employment. There is nothing in the record which contradicts the plaintiff's testimony to the effect that whatever he may have been engaged in doing for Smith or the insured, gratuitously or otherwise, had been completed two hours before the accident. Hence the plaintiff, at the time of his injuries, was not engaged in any business for the insured, nor had he been so engaged for two hours prior thereto.

164

From what has been said, and based on the findings of fact herein, the following conclusions of law have been reached, viz:

1. That the plaintiff at the time of his injuries was not an employee of the insured, "engaged in the business of the insured." The plaintiff not only had to be an employee of the insured, in the sense that word is usually used, at the time of his injuries, but he had to be engaged as such employee in the business of the insured to be excluded from coverage. An employee of the insured not engaged in his business would not be excluded; nor would one, not an employee, be excluded, even if doing something for the benefit of the insured.

2. That the plaintiff and the defendant Layton are entitled to judgments against the Maryland Casualty Company as prayed for in the complaint and in the cross-complaint respectively, except as otherwise agreed to by the parties concerned.

An order for judgment, conformable to the views herein expressed, will be signed on presentation.